559 A.2d 544

Don G. LAMPARSKI, Executor of the Estate of Henry C. Lamparski, Jr., Deceased

v.

SIKOV, LAMPARSKI & WONCHECK, a Professional Corporation, Appellant.

Don G. LAMPARSKI, Executor of the Estate of Henry C. Lamparski, Jr., Deceased, Appellant

v.

SIKOV, LAMPARSKI & WONCHECK, a Professional Corporation.

Superior Court of Pennsylvania.

Argued March 2, 1989.

Filed May 15, 1989.

Seymour A. Sikov, Pittsburgh, for appellant (at 465) and appellee (at 540).

Maureen D. Harvey, Pittsburgh, for appellee (at 465) and appellant (at 540).

Before CIRILLO, P.J., and TAMILIA and JOHNSON, JJ.

CIRILLO, President Judge:

These cross appeals are from an order entered in the Court of Common Pleas of Allegheny County dated February 26, 1988 which adopted the recommendations and conclusions of an appraiser and directed Sikov, Lamparski & Woncheck ("SLW"), a professional corporation engaged in the practice of law, to pay Don Lamparski, executor of the estate ("executor") of Henry C. Lamparski, ("decedent") a sum of $53,085.50.

Executor appeals from the order which valued decedent's shares of SLW at $53,685.50. Executor contends that the trial court erred in its valuation because it did not place a value on the contingent fee cases which were referred to Sikov and Love, P.A., another law firm. The referral occurred prior to the time of decedent's death but the cases were not disposed of until after the date of death, and

consequently the fees generated therefrom were not collected until after the date of death. SLW also appeals from this order which valuated decedent's shares.[1]

The decedent was an attorney and a holder of fifteen shares of SLW on the date of his death, September 3, 1984. At that time, there were thirty shares of stock in SLW outstanding. Executor filed a complaint in equity against SLW, Irving Sikov and William Woncheck,[2] in which he asked the court to order an accounting, appoint a receiver and marshal to account for the assets of SLW, dissolve SLW, and pay the decedent's estate fifty percent of the net value determined of SLW.

Pursuant to 15 Pa. § 2901 et seq., the court appointed an appraiser to hear testimony and to determine the value of decedent's fifteen shares. The court appointed Edwin Martin, Esquire, and, following a three day hearing, he submitted his conclusions and recommendations to the court. The report reveals that the ultimate issue to be determined was the value of the fifteen shares of stock held by decedent, and that the parties disagreed over the proper treatment of numerous pending personal injury cases which had been referred to the professional corporation of Sikov & Love, P.A., prior to decedent's death. According to the appraiser's report, these cases were subject to contingent fee arrangements, and any fee recovered by Sikov & Love would be divided equally with SLW.

After hearing testimony, the appraiser determined that the net asset method of valuation should be used to establish the value of decedent's shares as of September 4, 1984.[3] The appraiser stated that notwithstanding the executor's

1. The appeals have been consolidated at No. 465 Pittsburgh 1988. For purposes of Pa.R.A.P. 2136, SLW has been designated as appellee.

2. A review of the record reveals that in the complaint, SLW, Sikov, and Woncheck were named as defendants. However, some of the documents included in the record, for example, the notice of appeal and the full caption on the official docket sheet, contain captions which name only SLW as a defendant.

3. The appraiser noted that both parties agreed that the net asset method of valuation should be implemented to determine the value of the shares.

contention that future referral fees should be classified as assets of SLW and so valued, he must value the stock as of September 3, 1984, and consequently he would place no value on these cases.[4]

Furthermore, he stated that while he was making his valuation as of the date of decedent's death, most of the evidence relating to net asset value was generated from financial documents which related to the year ending December 31, 1984. He stated that the balance sheet of SLW for the year ending December 31, 1984, showed that the thirty shares of SLW had a value of $52,751.00. In a footnote to his report, the appraiser noted that neither party presented a financial statement of SLW for the period ending August 31, 1984. He stated that this would have been helpful because decedent's date of death was only several days thereafter. The appraiser also noted that the evidence presented of the corporate accounts as of September 3, 1984 did not contain sufficient facts from which a net asset value could be calculated. To calculate the fair value of the shares as of September 3, 1984, the appraiser added $53,420.00, an amount representing the bonuses paid to Sikov and Woncheck on December 21, 1984 to the December 31, 1984 value. The report thus concluded that the value of SLW as of September 3, 1984 was $106,171.00 and that decedent's fifteen shares had a value of $53,085.50.

On February 26, 1988, the Honorable Raymond Scheib adopted the appraiser's recommendations and ordered SLW to pay executor $53,085.50. Both parties then filed appeals from the order dated February 26, 1988.

Executor raises one issue for our consideration. He claims that the trial court erred in failing to include the attorney's fees from the cases referred to Sikov and Love, in its valuation of the decedent's shares in SLW.

SLW, in its appeal, raises two issues for our review. First, SLW argues that the trial court erred by adopting the appraiser's evaluation because it was not made as of Sep-

4. Each item in decedent's estate must be valued as of the date of decedent's death. 72 Pa.C.S. § 1721(a).

tember 3, 1984. SLW also argues that the trial court erred in using the balance sheet of SLW dated December 31, 1984, a document prepared three and one-half months subsequent to decedent's death, in its valuation. Second, SLW contends that it was erroneous for the trial court to include, in its valuation, the amount of monies paid to Sikov and Woncheck, in the form of bonuses, on December 21, 1984, which was approximately three and one-half months following the date of decedent's death.

With respect to the issue regarding the fees received from the referral cases, executor states that 15 Pa.S. § 2911 [5] provides for the appraisal of decedent's shares and directs the appraiser to proceed in accordance with 15 Pa.S. § 1515, the section of Business Corporation Law pertaining to the rights of dissenting shareholders. Further, he states that the parties and the appraiser agreed that the net asset value method should be implemented in determining the value of decedent's shares. He claims that the net asset value must take into consideration the value of the contingent fees generated from cases not yet settled or reduced to judgment at the time of his death. In support of this proposition, executor attempts to distinguish this court's decision in *Beasley v. Beasley*, 359 Pa.Super. 20, 518 A.2d 545 (1986), which held that contingent fees could not be considered when determining the present value or good will of a law firm for the purposes of equitable distribution. SLW then asks us to examine the *Estate of Curry*, 74 T.C. 540 (1980), in which the tax court assigned a value to

5.  15 Pa.S. § 2911(c) states:
    (c) if the corporation shall not otherwise have the right to acquire all the shares of a shareholder who becomes a disqualified person or of a deceased shareholder, the corporation shall nevertheless have an option to acquire such shares, subject to the provisions of subsection (b) of this section, at a price which is agreed upon by the parties, or if no agreement is reached then at the fair value as determined by the court of common pleas of the county in which the registered office of the corporation is located. In order to determine fair value, the court may appoint an appraiser to receive evidence and report to the court his findings and recommendations as to fair value. The appraiser shall have such powers and shall proceed, so far as applicable, in the same manner as appraisers appointed under section 515 of the Business Corporation Law.

contingent fee cases, which had not yet been reduced to settlement or judgment, in determining the gross estate of a decedent. Executor concedes that the valuation of the referred cases which are subject to contingent fee arrangements is a difficult task, but believes that the estate should not be deprived of the fair value of decedent's shares because of that difficulty.

SLW, on the other hand, argues that the contingent fee cases referred to Sikov and Love had no determinable value on the date of decedent's death and therefore can only be valued at the time of settlement or judgment. SLW states that executor produced no evidence of the value of these cases as of September 3, 1984, but produced evidence only of the amount of the settlements, judgments or the monies received by SLW subsequent to decedent's death. SLW contends that the value of a case a year or two after decedent's death is irrelevant to the valuation of decedent's stock as of the date of his death. Moreover, SLW finds the *Beasley* case to be instructive on the issue before us and the decision in *Curry* to be distinguishable and irrelevant.

■ In addressing the propriety of including the value of the contingent fee cases referred to Sikov and Love in the valuation of decedent's shares, we point out that both parties and the appraiser agreed that the net asset valuation method should be implemented in this case. We emphasize this in order to make it clear that the choice of valuation methods is not in dispute.[6] What is disputed is whether contingent fee cases referred to Sikov and Love

---

6. Recently, in *In re Glosser Brothers, Inc.,* 382 Pa.Super. 177, 555 A.2d 129 (1989), a panel of this court approved of the *Weinberger v. UOP, Inc.,* 457 A.2d 701 (Del.1983) approach to valuation. In *Glosser,* our court addressed the issue of whether it was erroneous for the trial court to refuse to assign any weight to market value of the stock in its valuation of stock under 15 Pa.S. § 1515, and held that the trial court erred by totally disregarding the market value because it had some relevance. The *Weinberger* approach allows courts to use a more liberal approach to valuation and requires that they consider any generally acceptable valuation methods in their appraisal of the fair value of the stock. Because the choice of valuation method is not in dispute, our approval in *Glosser* of the *Weinberger* method of valuation is not relevant to this case.

prior to the date of decedent's death, should be included in the valuation of decedent's shares as of the date of his death when as of that date these cases had not been settled or reduced to judgment, and no fees had been collected by SLW. We agree with the appraiser that the fees were not net assets of the corporation as of September 3, 1984, the date of decedent's death, and find that they were properly excluded from the valuation.

It appears that this is an issue of first impression in this Commonwealth and as such we look to existing case law for guidance. We believe that the *Beasley* case is instructive on the nature of contingent fees, notwithstanding the fact that the court in *Beasley* discussed contingent fees in the context of equitable distribution principles. One issue the court in *Beasley* addressed was whether the contingent fee cases of the husband's legal practice which were not yet settled or tried had a present value so as to constitute assets of that legal practice.

The court stated the following:

It is tenuous and risky to attempt to evaluate the likely return on contingent fees and as such, no value can be placed on them for purposes of equitable distribution. However, the Divorce Code is flexible and in this respect, the income producing capacity reflected by such cases can be estimated on the basis of compensation for completed cases and, therefore, that record should be sufficient to project the earning capacity of the attorney without speculating on the nebulous return that might be derived from examining active contingent fee cases. Permanent alimony, as support, is modifiable, and should the expectations vary either upward or downward, adjustments can be made by the court in an expeditious and reasonable manner.

. . . . .

Contingent fees, while having a degree of similarity to pensions, do not have the same expectation of vesting which permits greater certainty in fixing value and for

establishing present worth. Of course, in those cases wherein the professional is paid for service performed, a clear appraisal of the value of uncompensated work in progress can be made upon which a determination of marital property and division of that property can be based. This can be ascertained through bookkeeping records, which do not involve the evaluation of confidential files.

*Beasley*, 359 Pa.Super. at 39, 41, 518 A.2d at 554–555. The very nature of contingent fees is their uncertainty of return and consequently we believe that they have no place in the valuation of SLW as of September 3, 1984. The court in *DeMasi v. DeMasi*, 366 Pa.Super. 19, 530 A.2d 871 *allocatur denied* 517 Pa. 631, 539 A.2d 811 (1987) stated "before collection, no value can be assigned to the attorney's work as payment of the fee is uncertain." *Id.*, 366 Pa.Superior Ct. at 41, 530 A.2d at 881.

Moreover, the appraiser in the present case does not have the flexibility, provided by the Divorce Code, to estimate the value of the contingent fee cases on the basis of compensation received from other similar completed cases and then adjust his estimation should the actual compensation received vary substantially. *Beasley*, 359 Pa.Super. at 39, 518 A.2d at 554. Here, the valuation must be made as of the date of decedent's death. Any valuation of these cases as of that date would involve pure speculation. These are not the type of cases where fees are fixed based upon the services to be rendered, whereby an appraisal can be made establishing the value to the time of distribution as a recoverable asset. *Id.*

Finally, we note that Leonard A. Storch, C.A., a witness called by SLW testified that SLW utilized a cash basis method of accounting. He stated the balance sheets he had prepared for SLW did reflect any accounts receivable, that is, monies due. Further, he noted that he never had any discussion with the members of SLW about monies due and "[did not] know for a fact that there was an accounts

receivable." The appraiser's recommendation to exclude the uncollected fees from his valuation is consistent with Storch's testimony on the accounting procedures utilized by SLW. Based on the foregoing discussion, we agree with the appraiser's recommendation to exclude the referral cases from the valuation of SLW as of September 3, 1984.

We now turn to the issues raised by SLW. In their first argument, SLW contends that the trial court erred in adopting the appraiser's valuation because the valuation was not made as of the date of decedent's death, Sept. 3, 1984. In reviewing such a claim our standard of review is whether the recommendation made by the appraiser "was supported by competent and substantial evidence; 'substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *In re Watt & Shand, Appeal of O'Conner,* 444 Pa. 206, 283 A.2d 279, 280 (1971) (citing Davis, Administrative Law Treatise, Vol. 4 at 118 (1958)); *see also In re Jones & Laughlin Steel Corp.,* 328 Pa.Super. 442, 477 A.2d 527 (1985).

We find that the appraiser's numerous references to September 3, 1984 as the valuation date, together with his adjustment of the December 31, 1984 value of SLW to reflect the value of the corporation as of September 3, 1984, illustrates that he did use the proper valuation date. The appraiser stated:

It is undisputed that certain accounts on hand as of September 4, 1984 are assets of the defendant corporation. The evidence revealed that there was $19,200.00 in a money market account and $4,625.18 in the firm checking account as of that date. Defendants also place a value of $3,270.00 on furniture and supplies which plaintiff asserts is higher. There is no evidence as to the liabilities of the corporation on September 4, 1984.[7]

7. Although decedent died on September 3, 1984, appraiser occasionally refers to September 4, 1984 as the date of death because September 3 was Labor Day.

The defendants called Leonard A. Storch, C.A., accountant for the professional corporation as a witness. He had been the accountant for the corporation prior to 1984, as well as at the time of the death of the decedent, and still was at the time of hearing.

Mr. Storch reviewed in detail the balance sheets of the corporation. He stated, inasmuch as the corporation was on a cash basis, that no value could be given to matters which were pending, to work in progress, or to accounts receivable but not paid. He testified extensively from Exhibit 26, which was the balance sheet of the corporation for 1983, from Exhibit 27, which was the balance sheet for the corporation for 1984, as well as from Exhibits S and R, the corporation's Pennsylvania Corporate Stock Tax Reports for the years 1983 and 1984 respectively. The accountant testified that each of these documents reflected the value of the then issued and outstanding shares of stock in the professional corporation as of December 31st of each year. These documents, after correction of an error, reflected that the total value of the issued and outstanding thirty (30) shares of stock as of December 31, 1984 was in the amount of $52,751.00, or the sum of $1,758.36 per share. This consisted, as of December 31, 1984, of the following:

| | | |
|---|---|---|
| (1) | Retained Earnings | $49,751.00 |
| (2) | Issued and outstanding stock (30 shares at $100.00 per value each) | $ 3,000.00 |
| | | $52,751.00 |

Mr. Storch then went on to testify that the book value and net asset value of this professional corporation were the same. No value was ever given to work in progress or to accounts receivable inasmuch as this corporation worked and reported on a cash basis only.

Based upon our review of the appraiser's report and the record, we conclude that he did value decedent's shares as of September 3, 1984.

■ Moreover, we dismiss SLW's argument that the appraiser erroneously relied upon financial documents relating to the December 31 value notwithstanding the evidence regarding the value of the assets of SLW as of September 3, 1984. The appraiser noted in a footnote to his report that neither party presented a financial statement of SLW for the period ending August 31, 1984, and that the evidence presented of the corporate accounts as of September 3, 1984 did not contain sufficient facts from which a net asset value could be calculated. Our review of the record reveals that the appraiser's determination to use the financial documents for the year ending December 31, 1983, was supported by competent and substantial evidence.

■ Finally, we find that the appraiser's addition of $53,-420.00, the amount representing the bonuses paid to Sikov and Woncheck in December of 1984, to its determination of the net asset valuation of SLW as of the year ending in 1984, was supported by substantial and competent evidence.

The appraiser stated:

There was also testimony that it was the practice of defendant corporation to pay bonuses to its employees in December of each year. This practice was followed on December 31, 1984 when total bonuses were authorized in the amount of $53,420.00 (Exhibit P). Attorney Woncheck received a bonus of $45,000.00 in December 1984, and the remaining bonus amounts were paid to office personnel. Neither Henry Lamparski nor his estate received a bonus payment in 1984. These payments necessarily reduced the total value of stock shares on December 31, 1984, by reducing retained earnings.

Appraiser believed that the monies paid to Sikov and Woncheck following decedent's death were reflected in the financial statements of SLW dated December 31, 1984, and

thus depleted the value of decedent's shares, as of September 3, 1984.

Based upon the foregoing discussion, we affirm the order of the trial court.