**Robert A. HUBER, Appellant**

v.

**Michael A. ETKIN, Appellee.**

Superior Court of Pennsylvania.

Argued March 21, 2012.
Filed Nov. 26, 2012.

Edward J. Kelbon, Jr., Philadelphia, for appellant.

Robert B. White, Jr., Philadelphia, for appellee.

BEFORE: STEVENS, P.J., BOWES, J., GANTMAN, J., PANELLA, J., SHOGAN, J., ALLEN, J., LAZARUS, J., MUNDY, J., and WECHT, J.

OPINION BY WECHT, J.:

Robert A. Huber ["Appellant"] appeals from a November 8, 2010 order.[1] That order granted Michael A. Etkin ["Appellee"]'s post-trial motion and ordered a new trial. After careful review, we affirm.

The trial court concisely summarized the facts as follows:

[Appellant] and [Appellee] are former law partners in two partnerships: Etkin & Huber, LLP ("E & H") and Yankowitz, Etkin and Huber, LLP ("YEH").

＊　　＊　　＊

E & H was formed in 2002 by [Appellant] and [Appellee]. There was no written partnership agreement govern-

---

1. The order in question was dated November 5, 2010, but docketed November 8, 2010.

ing E & H. Pursuant to the oral partnership agreement profits were divided 52% for [Appellee] and 48% for [Appellant]. In October of 2002, YEH was formed by a written partnership agreement providing that Jack A. Yankowitz and the law firm of E & H were each 50% owners. On May 31, 2007, [Appellant] withdrew from E & H and YEH and notified both [Appellee] and Mr. Yankowitz.

[Appellant] and [Appellee] sent letters to all E & H and YEH clients, informing them of the dissolution of each partnership. The letters gave clients the choice of selecting which E & H partner they would retain to continue representation. Upon selection, that attorney continued representation. [Appellant] has been paid a total of $78,000 in pre-dissolution profits from E & H and YEH. No post-dissolution profits have been paid by either party.

Trial Court Opinion ["T.C.O."], 12/13/10, at 1–2 (internal footnotes omitted).

Appellant commenced suit in June 2008 with a praecipe for writ of summons. Appellant's complaint sought an accounting, as well as damages for breach of fiduciary duty, breach of contract, conversion, and tortious interference with business relations. The gravamen of the complaint was that Appellant had provided to Appellee an accounting of former E & H and YEH clients he retained, but that Appellee had not done the same. Appellant also alleged that Appellee improperly had retained control of partnership assets. Appellee filed counterclaims seeking an accounting and requesting damages for breach of fiduciary duty, conversion, and tortious interference with business relations. Appellee averred that Appellant had not made a full accounting and had diverted partnership assets and clients to Appellant.

A non-jury trial was held on May 25 and 27, 2010. At that point, Appellant was seeking the money he believed was owed him at the time that the partnerships dissolved. Notes of Testimony ["N.T."], 5/25/10, at 7. Appellant believed he was owed approximately $203,000 from E & H and YEH. N.T., 5/25/10, at 8.

At trial, Appellee was seeking his share of post-dissolution contingency fees that had been realized. N.T., 5/25/10, at 10–12. The partnerships had over 450 cases at the time of dissolution. N.T., 5/25/10, at 10. Appellee alleged that Appellant had collected over $400,000 in contingency fees for cases that began during the partnership, but finished after dissolution. N.T., 5/25/10, at 11.

Essentially, the parties held diametrically opposed views. Appellant believed that he should receive his share of the partnership assets as of the date of dissolution, and that anything earned after dissolution belonged to his new firm regardless of when the case had begun. Appellee believed that any case that was initiated during the partnership belonged to the partnership and that any sums earned from those cases, regardless of when earned and regardless of which attorney the client chose upon dissolution, were partnership assets.

After trial, the court: found for Appellant on his claim for money owed at the time of dissolution and awarded him $163,902.60; found for Appellee on Appellant's claim of tortious interference; and denied Appellee's counterclaim. Order, 7/1/10. The trial court relied on *Solo v. Padova*, 21 Phila. Co. Rptr. 22, 1990 WL 902426 (C.P. Phila 1990), in reaching its decision on Appellee's counterclaim. *See* T.C.O., 7/1/10.

Appellee filed a post-trial motion arguing that *Solo* was not consistent with Pennsylvania law on post-dissolution con-

tingency fees. On November 5, 2010, the trial court granted Appellee's motion and ordered a new trial. The trial court based its order on the conclusion that *Solo* was wrongly decided and that the contingency fee cases were assets of the partnership. Order, 11/5/10.

Appellant filed his notice of appeal on December 3, 2010. The trial court did not order a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant did not file one. A three-judge panel of this Court [2] affirmed the trial court. Appellant sought *en banc* review in this Court, and that request was granted on October 12, 2011.

Appellant presents five issues for our review:

A. Whether the trial court erred in granting Appellee's motion for post-trial relief and in ordering a new trial after entering a verdict in favor of Appellant in the amount of $163,902.60 plus interest for the pre-dissolution distributions owed to Appellant and in holding that uncollected contingency fees may not be awarded where there was no written agreement concerning the disposition of contingent fee profits after dissolution?

B. Whether the trial court erred in granting Appellee's motion for post-trial relief where the court found as a fact that the parties implicitly agreed to dispose of all profits as of the date of dissolution based upon the surrounding circumstances where the parties arranged for the clients to select the attorney to continue their representation, where new contingency fee agreements were signed for all ongoing representation by the selected attorney

and where the profits and costs were to flow exclusively to the selected partner?

C. Whether the trial court erred in granting Appellee's motion for post-trial relief and in holding that *Solo v. Padova* is not the law of Pennsylvania with respect to unresolved contingency fee cases at the time of dissolution but subsequently resolved?

D. Whether the trial court erred in failing to order that at most, Appellee is only entitled to quantum meruit from any portion of post-dissolution fees earned by Appellant from the cases which originated at Etkin & Huber and Yankowitz, Etkin and Huber, LLP?

E. Whether the trial court erred in failing to deny Appellee's motion for post-trial relief and in failing to dismiss Appellee's claim for post-dissolution fees earned by Appellant where Appellee did not plead an entitlement to any post-dissolution fees based upon quantum meruit?

Appellant's Brief at 4.

Our Supreme Court has delineated in detail the scope and standard of review that we employ when considering a challenge to the grant of a new trial:

Trial courts have broad discretion to grant or deny a new trial.... Although all new trial orders are subject to appellate review, it is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial.

\* \* \*

[W]hen analyzing a decision by a trial court to grant or deny a new trial, the

2. Of the three judges, two voted to affirm the trial court; one judge dissented.

proper standard of review, ultimately, is whether the trial court abused its discretion.

Each review of a challenge to a new trial order must begin with an analysis of the underlying conduct or omission by the trial court that formed the basis for the motion. There is a two-step process that a trial court must follow when responding to a request for new trial. First, the trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. The harmless error doctrine underlies every decision to grant or deny a new trial. . . .

To review the two-step process of the trial court for granting or denying a new trial, the appellate court must also undertake a dual-pronged analysis. A review of a denial of a new trial requires the same analysis as a review of a grant. First, the appellate court must examine the decision of the trial court that a mistake occurred.

At this first stage, the appellate court must apply the correct scope of review, based on the rationale given by the trial court. There are two possible scopes of review to apply when appellate courts are determining the propriety of an order granting or denying a new trial. There is a narrow scope of review: [w]here the trial court articulates a single mistake (or a finite set of mistakes), the appellate court's review is limited in scope to the stated reason, and the appellate court must review that reason under the appropriate standard.

[I]f the trial court leaves open the possibility that reasons additional to those specifically mentioned might warrant a new trial, or orders a new trial 'in the interests of justice,' the appellate court applies a broad scope of review, examining the entire record for any reason sufficient to justify a new trial.

Even under a narrow scope of review, the appellate court might still need to examine the entire record to determine if there is support for any of the reasons provided by the trial court.

The appropriate standard of review also controls this initial layer of analysis. If the mistake involved a discretionary act, the appellate court will review for an abuse of discretion. If the mistake concerned an error of law, the court will scrutinize for legal error. If there were no mistakes at trial, the appellate court must reverse a decision by the trial court to grant a new trial because the trial court cannot order a new trial where no error of law or abuse of discretion occurred.

If the appellate court agrees with the determination of the trial court that a mistake occurred, it proceeds to the second level of analysis. The appellate court must then determine whether the trial court abused its discretion in ruling on the request for a new trial. . . . An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion. . . .

When determining whether the trial court abused its discretion, the appellate court must confine itself to the scope of review, as set forth in our preceding discussion. If the trial court has provid-

ed specific reasons for its ruling on a request for a new trial, and it is clear that the decision of the trial court is based exclusively on those reasons, applying a narrow scope of review, the appellate court may reverse the trial court's decision only if it finds no basis on the record to support any of those reasons.

*Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116, 1121–23 (2000) (internal citations and quotation marks omitted).

■ Instantly, the trial court articulated one basis for its decision to grant a new trial: that it erroneously relied on the *Solo* case in determining that the contingency fees were not partnership assets. Accordingly, our scope of review is limited to that basis alone. Because the trial court's decision is based upon its reading of case law, our standard of review is to determine whether the trial court made a legal error. If we conclude that an error did occur, we must then determine whether the trial court abused its discretion in granting a new trial.

Applying the above-stated scope of review to the instant case, we must first determine whether the trial court erred in concluding that *Solo* is not determinative of the outcome of the instant case. To do so, we must address whether contingency fees from cases that were initiated during the partnership, but realized following dissolution of the partnership, are the property of the partnership subject to division between the partners or the property of the individual attorney chosen by the client following dissolution.

The Uniform Partnership Act ["UPA"] "shall apply to every partnership heretofore and hereafter organized." 15 Pa. C.S.A. § 8301. The UPA also applies to limited liability partnerships, which E & H and YEH undeniably were. 15 Pa.C.S.A. § 8311. The dissolution of a partnership occurs when any partner ceases to be associated with the carrying on of the business. 15 Pa.C.S.A. § 8351. When there is no partnership agreement or the agreement is silent, then the UPA will control upon the firm's dissolution. The partnership is not terminated at dissolution. Instead the partnership continues until the affairs of the business are wound up. 15 Pa.C.S.A. § 8352.[3] As a general rule, when a partnership dissolves, each partner is entitled to a share of the surplus partnership property after it has been applied to liabilities. 15 Pa.C.S.A. § 8360(a).

■ However, the UPA's definition of partnership property does not speak directly to contingency fees. Thus, no specific provision of the UPA applies to the instant situation. Nonetheless, the UPA's provisions indicate that unrealized contingent fees are subject to the continuing duty to the partnership during winding up. The parties agree that E & H did not have a written partnership agreement. Appellant's Brief at 5; Appellee's Brief at 10. The parties also agree that the partnership agreement for YEH did not address the issue presented herein. Appellant's Brief at 6; Appellee's Brief at 10.[4]

---

**3.** *See Ruby v. Abington Memorial Hospital*, 2012 PA Super 114, 50 A.3d 128, 135 (Pa.Super.2012) (contingency fee cases in the midst of litigation at the time of attorney's departure were unfinished business). In *Ruby*, unlike in this case, a written agreement accounted for the distribution of attorney fees following the attorney's departure from the firm. *Id.* at 134–35.

**4.** The dissent argues that, by sending letters to the partnership's clients that did not advise that the partners had a continuing duty to each other for unrealized contingency fees, the parties agreed not to consider such fees as partnership assets. Op. at 785–87. This assumption is contradicted by the parties' testimony. Appellant testified that no agreement was reached on the division of fees. N.T.,

Appellant argues that *Solo* is controlling and was correctly decided because it relied on Pennsylvania precedent that held contingency fees were too speculative to be included as property. Appellant's Brief at 11–13. Appellant contends that, in granting a new trial, the trial court relied on inapposite cases. Appellant's Brief at 13–17. Appellant argues that the partners intended to wind up the partnership in 2007 and that any fees earned from a given case after the winding up process were the property of the partner who took over that case. Appellant's Brief at 14–15. As evidence of this agreement, Appellant points to the fact that clients signed new fee agreements with the attorney that those clients selected, that clients are allowed to terminate an attorney's representation at any time, and that Appellee filed final tax returns for E & H and YEH in 2007 manifesting Appellee's understanding that E & H and YEH were fully wound up prior to those filings. *Id.*

Appellee, on the other hand, contends that the cases underpinning *Solo* are inapposite. Appellee's Brief at 11. Appellee argues that a case determining whether contingency fees were properly part of a valuation at the time of a partner's death and a case involving valuing contingency fees cases as part of a divorce were not helpful in resolving the issue at hand. Appellee's Brief at 11–13. Appellee argues that case law indicates that a contract in progress at dissolution remains a partnership contract and is subject to the provisions of the Uniform Partnership Act that govern the winding up of the partnership's affairs. Appellee's Brief at 16–17. Appellee avers that subjecting contingency fees earned post-dissolution to division between the partners would not interfere with a client's right to dismiss an attorney. Appellee's Supplemental Brief at 6–10.

In determining that a new trial was warranted, the trial court agreed that the cases relied on in *Solo* do not furnish a proper basis to determine how to handle post-dissolution contingency fees. T.C.O., 12/13/10, at 4. Instead, the trial court relied upon other cases that considered post-dissolution contingency fees as part of the partnership's property. T.C.O., 12/13/10, at 3 (citing *In re Labrum & Doak, LLP*, 227 B.R. 391 (Bankr.E.D.Pa.1998); *Melenyzer v. Tershel*, No. 99–5200, 2004 WL 5149401 (C.P. Washington 2004)). The trial court concluded that, because the contingency fees could be valued in this case, they were partnership assets subject to division between the parties. T.C.O., 12/13/10, at 5.

■ We now turn to *Solo* and the cases upon which it is based.[5] As in the case *sub judice*, *Solo* involved the dissolution of a partnership between attorneys with no partnership agreement. *Solo*, 21 Phila. Co. Rptr. at 23. At issue in the case were contingency fees earned post-dissolution.

5/25/10, at 28–29. Appellant testified that he believed he was entitled to all the money earned from the contingency case that resolved after the firm dissolved. N.T., 5/25/10, at 68. Appellee also testified that no agreement was reached on disposition of fees. N.T., 5/27/10, at 18–19. Appellee testified that the money earned from contingency fees obtained after the dissolution still belonged to the partnership. N.T., 5/27/10, at 31. The parties agreed to send a letter informing the clients of the split and asking the clients to choose which attorney they wished to use. While it may have been best for the parties to resolve their dispute about the ownership of fees prior to sending the letter, it is clear from the testimony that the partners did not reach such an agreement.

5. We note that decisions of the Courts of Common Pleas are not binding precedent for the appellate courts, but may be considered for their persuasive authority. *Hirsch v. EPL Technologies, Inc.*, 910 A.2d 84, 89 (Pa.Super.2006).

*Id.* The trial court determined that uncollected contingency fees were not assets of the partnership. *Id.* at 27. The trial court specifically relied on two cases: *Lamparski v. Sikov,* 384 Pa.Super. 491, 559 A.2d 544 (1989), and *Beasley v. Beasley,* 359 Pa.Super. 20, 518 A.2d 545 (1986). However, as we examine each in turn, we conclude that these cases do not support the conclusion reached in *Solo* that contingency fees are not assets of the partnership.

*Lamparski* addressed the valuation of the stock of a law firm for the purpose of determining the amount to include in a deceased partner's estate. *Lamparski,* 559 A.2d at 545. To that end, an appraiser was appointed; he determined that there should be no value placed on contingency fee cases that had been referred to another firm. *Id.* Those cases were referred prior to the partner's death, but were not yet resolved at the time of death. *Id.* The appraiser was to make a determination of value as of the date of death. *Id.* at 546. Relying on *Beasley,* this Court held that contingency fees were too uncertain to be included in the valuation. *Id.* at 548.

*Beasley,* a divorce case, involved the wife's attempt to place a value on the goodwill associated with the husband's sole proprietorship law firm. *Beasley,* 518 A.2d at 546. The wife contended that a value could be placed on the goodwill, which could then be divided as part of equitable distribution. *Id.* The firm worked on a contingency basis. This Court held that it was too risky to try to anticipate and estimate a return on contingency fees; thus, they held no value for purposes of equitable distribution. *Id.* at 554. However, this Court recognized that contingency fees would be treated as income or a component of an earning capacity for alimony or support determinations. *Id.*

■ Both *Lamparski* and *Beasley* focus on the value of contingency fees at a particular date: date of death and date of separation/trial, respectively.[6] Their holdings that contingency fees are too speculative as of the date of valuation make sense when the court must determine value on a specific date and when the contingency fees in question are still unresolved. However, neither case speaks to the dissolution of a partnership, which, under the UPA, is not bound to a specific date in the determination of value. The UPA specifically contemplates a winding up period during which the contingency fees can be resolved and become susceptible to valuation. Instantly, the contingency fees were resolved by the time of trial and thus could be valued. Therefore, *Lamparski* and *Beasley* do not apply to the current situation, and the trial court in *Solo* should not have relied upon those cases.

■ Turning next to the authorities relied upon by the trial court in granting the new trial in the instant case, we examine *In re Labrum & Doak, LLP,* 227 B.R. 391 (Bankr.E.D.Pa.1998).[7] The bankruptcy court, identifying the assets of a law firm under the Pennsylvania UPA, looked to general principles of partnership law to hold that the partnership did not end at

6. Equitable distribution relates to marital property. Marital property is defined as property obtained during the marriage. 23 Pa.C.S.A. §§ 3501(a), 3502. The trial court has discretion as to whether to value the marital property at either the time of separation or the time of trial to obtain an equitable result, but valuation is made as of a date certain. *Smith v. Smith,* 439 Pa.Super. 283, 653 A.2d 1259, 1265 (1995).

7. Decisions of the federal district courts are not binding authority for this Court, although they may be persuasive. *Umbelina v. Adams,* 34 A.3d 151, 159 (Pa.Super.2011).

dissolution, but extended through the winding up period. 227 B.R. at 407. During that period, the partners still owe each other a duty, and must complete the unfinished business of the partnership. *Id.* at 407–08. In surveying other jurisdictions, the bankruptcy court concluded that post-dissolution proceeds (obtained during the winding up), whether from hourly or contingency fees, are assets of the partnership. *Id.* at 408.

The trial court here also cited *Melenyzer v. Tershel,* No. 99–5200, 2004 WL 5149401 (C.P. Washington January 2, 2004). In that case, the trial court squarely addressed the issue of whether cases brought into a partnership prior to dissolution were partnership assets. Relying on the UPA and *Bracht v. Connell,* 313 Pa. 397, 170 A. 297 (1933), the *Melenyzer* court determined that any cases in progress at the time of dissolution were partnership property and that the partners owed a fiduciary duty to each other to wind up unfinished partnership business.

In *Bracht,* three partners began a road construction business. 170 A. at 298. The partnership dissolved, and the partners agreed on the split of some of the assets. However, two of the partners, using partnership resources and without the knowledge of the third, bid on a contract prior to dissolution. *Id.* at 298. The Court held that, because partnership resources were used to secure the contract, the contract was an asset of the partnership and the two partners were required to account to the third for his interest. *Id.* at 300.

■ Based on a review of these cases and applicable statutes, we conclude that contingency fees realized post-dissolution are assets of the partnership. The contin-

gency fees cases that were brought into E & H during the partnership were obtained with partnership resources. Therefore, they were partnership assets. It does not matter whether the contingency fees were realized at the time of dissolution, because the partnership business had yet to wind up. During that winding up, the partners continued to owe one another a fiduciary duty.

■ Other jurisdictions have reached similar results, generally holding that contingency fees are assets of the partnership.[8] As an example, where one partner worked on contingency fee cases with which the clients indicated they wanted him to remain involved after dissolution, a court held that the contractual obligation to conclude the cases was part of the fiduciary duty owed amongst the partners. *Resnick v. Kaplan,* 49 Md.App. 499, 434 A.2d 582, 585, 587 (1981). Fees earned from cases pending at dissolution were partnership assets. *Id.* at 587. The court also affirmed that, although a client has the right to select the attorney the client wants, the client's right does not diminish or change the fiduciary duties of the partners. *Id.* at 588. *See also Jewel v. Boxer,* 156 Cal.App.3d 171, 203 Cal.Rptr. 13, 16–17 (1984) (holding income generated through the winding up of unfinished cases is allocated to the former partners and the right of the client to select an attorney of one's choice is irrelevant to the rights and duties between the parties); *LaFond v. Sweeney,* —— P.3d ——, ——, No. 10CA2005, 2012 WL 503655, at *7 (Colo. Ct.App. Feb. 16, 2012) (holding an attorney who carries on representation of an existing case after a law firm dissolves does so on the firm's behalf, and any income derived from the case belongs to the

---

8. The decisions of courts of other states are persuasive, but not binding, authority. *Umbe-* *lina,* 34 A.3d at 160 n. 3.

dissolved firm); *Frates v. Nichols,* 167 So.2d 77, 82 (Fla.Dist.Ct.App.1964) (holding fees derived from pending negligence cases after the effective date of withdrawal from the partnership were subject to division between the partners); *Ellerby v. Spiezer,* 138 Ill.App.3d 77, 81, 92 Ill.Dec. 602, 485 N.E.2d 413 (Ill.App.Ct.1985) (holding that handling contingency fee cases is part of winding up and fees earned in those cases were partnership assets); *Sullivan, Bodney & Hammond v. Bodney,* 16 Kan.App.2d 208, 820 P.2d 1248, 1251 (1991) (holding contingency fee cases commenced prior to dissolution are assets of the firm); *Hurwitz v. Padden,* 581 N.W.2d 359, 361 (Minn.Ct.App.1998) (pending contingency fee files are uncompleted transactions of the firm and part of winding up and fees earned are assets of the firm); *Gull v. Van Epps,* 185 Wis.2d 609, 517 N.W.2d 531, 536 (App.1994) (holding partners of dissolved firm are entitled to share in fees for pre-dissolution cases earned after dissolution even when the client exercises its right to choose an attorney).

Notably, we acknowledge that at least one jurisdiction does not agree. In *Welman v. Parker,* 328 S.W.3d 451, 454 (Mo. Ct.App.2010), a client decided to have his case handled by an attorney who left the firm that originally was handling the case. The client eventually signed a new fee agreement with the departing attorney. The trial court, relying on *Ellerby, supra,* found that the contingency fee earned from the case belonged to the partnership. *Id.* The appellate court, however, found that decision incompatible with prior Missouri cases holding that a discharged firm is entitled only to quantum meruit. *Id.* at 456–57. The court determined that adherence to *Ellerby* would limit a client's ability to hire the attorney of his or her choice. The court rejected the trial judge's statement that the client could not discharge the firm. *Id.* at 457. In essence, the Missouri court treated the case not as a dissolution of a partnership in which the partners had a fiduciary duty to one another, but as a situation in which a client merely chose to leave one firm and hire another.

 The Missouri court correctly stated that a client is free to choose any attorney he or she wishes. *See Kenis v. Perini Corp.,* 452 Pa.Super. 634, 682 A.2d 845, 849 (1996). Without a doubt, clients are free to choose, and to change representation at any time. *Mager v. Bultena,* 797 A.2d 948, 956 (Pa.Super.2002). We agree with the many jurisdictions that have decided that this freedom to choose does not impinge upon the duties that partners continue to owe to one another during the winding up phase that dissolves a partnership. *See also Ruby, supra* at 136–37 (written agreement to split attorney fees with prior firm did not affect client's right to have counsel of choice). Had the clients of E & H chosen to find a new attorney and not work with either Appellant or Appellee, then quantum meruit would be at issue. *See Sundheim v. Beaver County Building & Loan Association,* 140 Pa.Super. 529, 14 A.2d 349, 351 (1940) ("A client may terminate his relation with an attorney at any time, notwithstanding a contract for fees, but if he does so, thus making the performance of the contract impossible, the attorney is not deprived of his right to recover on a quantum meruit *[sic]* a proper amount for the services which he has rendered."). Instead, the clients chose to work with an attorney who owed a continuing duty to his former partner. The client's choice did not alter that duty. The client originally signed a contingent fee agreement, agreeing that the client would receive a certain share of any award and that the attorney would receive the other. Generally, a fee agreement does not then proceed to detail how the

attorney shares that fee within his or her firm; a client does not consider such information when choosing representation. The client was still getting what he or she bargained for: to wit, the chosen attorney and the same percentage of anything recovered in the litigation.

In representing those clients whose cases originated with the partnership, Appellant was winding up partnership business. The fees earned from those cases were partnership assets. The trial court was correct in treating them as such.

The trial court made an error of law when it relied initially on *Solo,* and correctly recognized that error when Appellee filed his post-trial motion. Having found the trial court did err in the first trial, we then review the trial court's decision granting a new trial under an abuse of discretion standard. Here, the contingency fees that have been realized during the winding up period should have been considered in determining what Appellant's and Appellee's obligations to one another are. A new trial is needed to allow for that consideration. The trial court did not abuse its discretion in granting a new trial.

Order affirmed. Jurisdiction relinquished.

MUNDY, J. files a Dissenting Opinion in which ALLEN, J. joins.

DISSENTING OPINION BY MUNDY, J.:

Based upon its interpretation of the Uniform Partnership Act (UPA),[1] the Majority adopts the position that, absent agreement to the contrary, when a partnership that is engaged in legal practice dissolves, any unrealized contingent fees remain assets of the partnership subject to continued mutual fiduciary duties among the partners during a winding up period, and that such fees when realized are accountable to the partnership. Because I believe the Majority applies this default position of the UPA in a manner that erroneously supersedes the right of each client to determine his or her own representation, and because in my view the parties in the instant case acted with a contrary intent, I respectfully dissent.[2]

The Majority analyzes the provisions of the UPA relative to the rights and duties of partners upon dissolution of the partnership and winding up of partnership affairs in the absence of an agreement controlling those issues.[3] In doing so, the Majority recognizes that, "the UPA's definition of partnership property does not speak directly to contingency fees. Thus, no specific provision of the UPA applies to the instant situation." Majority Opinion at 777. Nevertheless, the Majority accepts as persuasive the cases from other jurisdictions that base their holdings on the conclusion that the UPA does apply to contingent fees. *See Frates v. Nichols,* 167 So.2d 77 (Fla.Dist.Ct.App.1964); *Resnick v. Kaplan,* 49 Md.App. 499, 434 A.2d 582 (1981), *cert. denied,* 292 Md. 14 (1981); *Jewel v. Boxer,* 156 Cal.App.3d 171, 203 Cal.Rptr. 13 (1984); *Ellerby v. Spiezer,* 138

---

1. 15 Pa.C.S.A. §§ 8301–8365.

2. I agree with the Majority that Appellant's reliance on *Solo v. Padova,* 21 Phila.Co.Rptr. 22 (Pa.Com.Pl.1990), is misplaced as the case law relied on by the *Solo* court involved either a specific controlling agreement or the necessity of dividing assets prior to the occurrence of the contingency upon which the fee could be realized. *Solo* does not address the issue I deem dispositive and hence is unhelpful.

3. *See* 15 Pa.C.S.A. § 8352 (providing that dissolution does not terminate a partnership until the winding up of partnership affairs is completed).

Ill.App.3d 77, 92 Ill.Dec. 602, 485 N.E.2d 413, (1985).[4]

I do not dispute the Majority's basic contention that, absent an agreement to the contrary, the UPA presumes unrealized contingent fees are partnership assets subject to the partners' continuing duty to the partnership during the winding up process. That presumption, however, imposes an obligation on the partnership and the partners to fully disclose to their contingency-fee clients each partner's continuing duty to the partnership. In my view, the Majority's position in this case fails to take into proper account the unique relationship between an attorney and his or her client and subordinates the rights of a client to decide his or her own representation. It is axiomatic that a client is the owner of his or her cause of action and of his or her case file. *See Maleski by Chronister v. Corporate Life Ins. Co.,* 163 Pa.Cmwlth. 36, 641 A.2d 1, 6 (1994) (noting "it is the client, rather than the attorney who holds a proprietary interest in [file] document[s]"); Pa.R.Prof.Cond. 1.15(b). A client has the right to change representation at any time for any reason. *Mager v. Bultena,* 797 A.2d 948, 958 (Pa.Super.2002), *appeal denied,* 572 Pa. 725, 814 A.2d 678 (2002); *see also Kenis v. Perini Corp.,* 452 Pa.Super. 634, 682 A.2d 845, 849 (1996). An attorney has no property rights to the cause of action or contractual right to an unrealized contingent fee or to continued representation of a client by virtue of a fee agreement. *Mager, supra* at 958.

No Pennsylvania appellate court has ever awarded a proportionate share of a contingency fee to a firm discharged by the client well prior to the occurrence of the contingency, for the simple reason that a client may discharge an attorney at any time, for any reason. Once the contractual relationship has been severed, any recovery must necessarily be based on the work performed pursuant to the contract up to that point. Where the contingency has not occurred, the fee has not been earned.

An attorney ... does not acquire a vested interest in a client's action. To rule otherwise would make fiction of the oft-repeated rule that a client always has a right to discharge his attorney, for any reason or for no reason.

*Id.,* at 957–958 (citations and footnotes omitted).

For a client to be able to exercise this right meaningfully, full candor and disclosure is necessary. To that end, the Pennsylvania Rules of Professional Conduct are replete with provisions establishing the ongoing duty of an attorney to advise a client of changes affecting his or her representation of the client.

**Rule 1.4. Communication**

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;

. . .

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted

---

4. Several states have applied these principles to other types of business entities. *See Fox v. Abrams,* 163 Cal.App.3d 610, 210 Cal.Rptr. 260, 263 (1985) (professional corporation); *Sullivan, Bodney & Hammond v. Bodney,* 16 Kan.App.2d 208, 820 P.2d 1248, 1250 (1991)(law corporation); *Hurwitz v. Padden,* 581 N.W.2d 359, 362 (Minn.Ct.App.1998) (LLC); *Gull v. Van Epps,* 185 Wis.2d 609, 517 N.W.2d 531, 536 (App.1994) (LLC); and *LaFond v. Sweeney,* —— P.3d ——, 2012 WL 503655 (Colo.Ct.App.2012) (LLC).

by the Rules of Professional Conduct or other law.

**(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.**

. . .

Pa. Rule of Prof. Conduct 1.4 (emphasis added).

(c) A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent.

Pa. Rule of Prof. Conduct 1.2(c).

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

. . .

(e) A lawyer shall not divide a fee for legal services with another lawyer who is not in the same firm unless:

(1) **the client is advised** of and does not object to the participation of all the lawyers involved, and

(2) the total fee of the lawyers is not illegal or clearly excessive for all legal services they rendered the client.

Rules of Prof. Conduct 1.5(c), (e) (emphasis added).

*Division of Fee*

[4] A division of fee is a single billing to a client covering the fee of two or more lawyers who are not in the same firm. A division of fee facilitates association of more than one lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist. Paragraph (e) permits the lawyers to divide a fee if the total fee is not illegal or excessive and the client is advised and does not object. It does not require disclosure to the client of the share that each lawyer is to receive.

*Id.* **Explanatory Comment.**

(e) **"Informed consent"** denotes the consent by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.

Rules of Prof. Conduct 1.0(e).

[4] A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services. Where future dispute about the withdrawal may be anticipated, it may be advisable to prepare a written statement reciting the circumstances.

Rules of Prof. Conduct 1.16, EXPLANATORY COMMENT [4].

**Rule 1.17. Sale of Law Practice**

A lawyer or law firm may, for consideration, sell or purchase a law practice,

including good will, if the following conditions are satisfied:

. . .

(c) Actual written notice is given to each of the seller's clients, which notice must include at a minimum:

(1) notice of the proposed transfer of the client's representation, including the identity and address of the purchasing lawyer;

(2) a statement that the client has the right to representation by the purchasing lawyer under the preexisting fee arrangements;

(3) a statement that the client has the right to retain other counsel or to take possession of the file; and

(4) a statement that the client's consent to the transfer of the representation will be presumed if the client does not take any action or does not otherwise object within 60 days of receipt of the notice.

. . .

Rules of Prof. Conduct 1.17(c).

In addition to the Rules of Professional Conduct, our Supreme Court has emphasized the importance of maintaining clients' free and informed choice of representation in the context of lawyers' competition for clients. In *Adler, Barish, Daniels, Levin and Creskoff v. Epstein,* 482 Pa. 416, 393 A.2d 1175 (1978), our Supreme Court recognized that certain conduct by former associates of a law firm, in enticing clients of the firm to discharge the firm and hire the former associates' new firm, could support a claim of tortious interference with contractual relations where the alleged conduct "frustrates, rather than advances, [the] clients' 'informed and reli-

able decisionmaking.'" *Id.* at 1181. In *Adler,* several associates, planning to leave the Alder Barish firm that employed them, used anticipated fees from pending Alder Barish cases to secure a line of credit for their anticipated new firm. Upon leaving Alder Barish, the former associates engaged in a campaign of solicitation of Alder Barish clients to induce them to change representation. The Court noted as follows.

> [Former Associates'] concern for their line of credit and the success of their new law firm gave them an immediate, personally created financial interest in the clients' decisions. In this atmosphere, [Former Associates'] contacts posed too great a risk that clients would not have the opportunity to make a **careful, informed decision.**

*Id.* (emphasis added).

While these examples do not speak directly to the issue at hand, from them, I discern a clear public policy in this Commonwealth giving the rights of the client primacy regarding decisions affecting his or her representation. In turn, those rights are dependent on full and accurate disclosure of options to the client to insure a free and informed choice is made.

The UPA's default position, regarding the rights and obligations of partners for winding up partnership affairs and the disposition of unrealized contingent fees, when there is no previous agreement among the partners relative to these issues, cannot operate to defeat the rights of a client to make an informed decision about future representation. Nor does the UPA's default position preclude the partners from creating a contemporaneous agreement at the time of dissolution.[5]

---

5. In the case where partners have agreed that uncompleted partnership contingent fee cases shall belong to the partnership and be subject to winding up obligations, the clients should be advised that neither attorney may be retained independent of the partnership much the same way that an attorney may be precluded from representing either of two former

Accordingly, upon dissolution of the Etkin and Huber (E & H) and Yankowitz, Etkin and Huber partnerships in this case, in the absence of a prior agreement, the parties had three options upon which they could have agreed in winding up the affairs of the partnership. They could have advised each client that unless they hired new counsel, the former partner the client chose to continue with the case would do so, 1) on behalf of the partnership in winding up partnership matters (the UPA default position); 2) in his individual capacity subject to fee sharing; or 3) individually, independent of the partnership.[6] In each case, the client would be in a position to make an informed decision whether to continue with either attorney or to seek alternative representation. As noted in the summary of the facts by the trial court, the parties **agreed** to send letters to all clients, advising them of the dissolution of the partnerships and presenting them with options for future representation. Those letters provided each client with the third option described above, to wit, that the client could choose continued representation by either former partner through their respective new firms or hire new counsel.[7] Importantly the letters sent to

---

clients when a conflict of interest arises. *See* Pa. Rule of Prof. Conduct 1.7 cmts. [4], [29]. As discussed herein, the parties, per agreement, in their letters to their clients did not communicate any such limitation.

6. If the parties upon dissolution of the partnerships disagreed about the status of outstanding contingent fee cases and the proper options to present to their clients, it was incumbent upon them to resolve their dispute before advising their clients, or at a minimum to advise their clients of the ongoing disagreement and its potential outcomes.

7. The letters contained the following language.

[ETKIN AND HUBER LETTERHEAD]
RE Your case
Dear
Please be advised that the partners of Etkin & Huber, LLP are discontinuing their law practice together. As of June 15, 2007, Robert A. Huber, Esquire will have a new law practice at the firm of Huber and Palsir, LLC, 201 Spring Garden Street, Suite 201, Philadelphia, PA 19123. Michael A. Etkin, Esquire, together with Jennifer R. Etkin, Esquire will continue their law practice at the firm's office located at 4961 Oxford Avenue, Philadelphia, PA 19124.
Because Mr. Huber is most familiar with your file and has primarily handled your case, your file will be transferred to him at his new office for continued work and handling from June 15, 2007 on.
Attached for your use is a checklist to select the attorney that you want to handle your case. Kindly return the form either by facsimile transmission or in the envelope provided. If we do not receive the selection of attorney form back within thirty (30) days your file will continue to be handled by Mr. Huber from his new office location. The fee arrangements will remain the same.
Please feel free to contact Mr. Huber or Mr. Etkin/Ms. Etkin with any questions as follows.

Robert A. Huber, Esquire Michael A Etkin, Esquire
Huber and Palsir, LLC Jennifer R. Etkin, Esquire
[address and phone] [address and phone]

Very truly yours

N.T., 5/27/10, at 5, Exemplar of Letter Sent to Clients, Plaintiff's Trial Exhibit P–3. The selection of attorney form contains the following language.
*ATTORNEY CHOICE*
___ I wish to be represented by Robert A. Huber, Esquire and authorize transfer of all paper and electronic files to Mr. Huber at his new Huber and Palsir, LLC.
___ I wish to be represented by Michael A. Etkin, Esquire or Jennifer R. Etkin, Esquire and authorize transfer of all paper and electronic files to Mr. Etkin or Ms. Etkin.

the clients did not advise them that the continued representation by either party would be in the capacity of a partner winding up partnership business or that any realized fee would be divided accordingly. Therefore, the parties are bound by the representation options they agreed to present to the clients. *See In re Berlant*, 458 Pa. 439, 328 A.2d 471, 480 (1974) (Manderino, J., concurring and dissenting) (noting, "[contingent fee agreements] have been subjected to careful scrutiny to see that no unfair advantage is taken of the clients' position or lack of knowledge"). Appellant cannot now raise a claim based upon the UPA, having agreed to a notice to the clients that foreclosed that option as a choice for the clients.[8]

In response to concerns about a client's rights respecting representation, the Majority accepts the reasoning of jurisdictions finding the default position of the UPA dispositive, including *Jewel*. The *Jewel* court, in an unsupported and conclusory fashion, dismissed that concern as follows.

[T]he right of a client to the attorney of one's choice and the rights and duties as between partners with respect to income from unfinished business are distinct and do not offend one another. Once the client's fee is paid to an attorney, it is of no concern to the client how that fee is allocated among the attorney and his or her former partners.

*Jewel, supra* at 178, 203 Cal.Rptr. 13.

Accordingly, the Majority concludes that the clients of E & H "chose to work with an attorney who owed a continuing duty to his former partner. The client's choice did not alter that duty." Majority Opinion at 781. The Majority's conclusion ignores the attorneys' duty to fully inform their clients of their continuing partnership obligation. It also ignores the fact that the parties in this case agreed to the letter describing the representation options available to their clients, which did not include representation as "an attorney who owed a continuing duty to his former partner." *Id.* In these circumstances, I conclude the clients' choices did extinguish that continuing duty.

I believe the view expressed by the Missouri Court of Appeals better reflects this Commonwealth's clear emphasis on the supremacy of the rights of a client to make informed decisions about who will represent him or her.

The decision as to whether the contingent-fee contract remains an asset of the dissolved partnership is solely the decision of the informed client who has the free choice to further engage the services of the former partners, the withdrawing partner—either individually or as a partner in a new partnership—or

---

___ I wish to be represented by Jack Yankowitz, Esquire and authorize transfer of all paper and electronic files to Mr. Yankowitz.
___ I wish to be represented by _____ and authorize transfer of all paper and electronic files to him/her at the firm of _____

[identification and signature lines]
*Id.*

8. The Majority suggests that I argue "that by sending letters to the partnership's clients

that did not advise that the partners had a continuing duty to each other for unrealized contingency fees, the parties agreed not to consider such fees as partnership assets." Majority Opinion at 777, n. 4. To the contrary, I recognize that the parties may not have reached a meeting of the minds on this issue. However, by agreeing to the form of the letter advising the partnership clients of their representation options, the parties may not now undermine the informed choices of those clients to resolve a dispute, about which they neglected to inform their clients.

an entirely different attorney or law firm.

*Welman v. Parker*, 328 S.W.3d 451, 456 (Mo.Ct.App.2010).

The Majority oversimplifies the holding in *Welman* as follows. "In essence, the Missouri court treated the case not as a dissolution of a partnership in which the partners had a fiduciary duty to one another, but as a situation in which a client merely chose to leave one firm and hire another." Majority Opinion at 781. To the contrary, the Missouri court recognized the continuing fiduciary duty of former partners. However, it also recognized that the rights of the clients temper that duty, "which requires both the law firm and the withdrawing partner to **advise the client** of this material change in representation and to obtain the client's **informed** direction as to how the client desires to be represented from that point forward." *Welman, supra* at 456 (emphasis added). The client in *Welman* had not been advised of any ongoing fiduciary duty to the former law firm when he chose the departing partner and her new firm to continue his representation. *Id.* at 454. If an attorney from a dissolved partnership is precluded by agreement or operation of law

from representing a partnership client independent of his or her obligations to the former partnership, a client must be so advised in order for him or her to make an informed choice of representation.[9] As noted, in my view the parties in the instant case did not offer their clients the choice of continuing with either partner acting for the partnership in winding up the partnership affairs.

Further, I disagree with the cases relied on by the Majority and their conclusion that the issue of continued partnership fiduciary duty and division of the contingency fee is "of no concern" to a client's decision about continued representation.

The clients of the partnership were free to be represented by any member of the dissolved partnership or by other attorneys of their choice. This right of the client is distinct from and does not conflict with the rights and duties of the partners between themselves with respect to profits from unfinished partnership business since, **once the fee is paid** to an attorney, it is of no concern to the client how the fee is distributed among the attorney and his partners.

*Ellerby, supra* at 416, citing *Jewel, supra* at 17 (emphasis added).

9. I believe this obligation of the attorneys to inform applies equally to instances where there is a partnership agreement providing that unrealized contingent fees remain partnership assets subject to a continuing obligation of the partners to one another during the *winding down* of partnership affairs. Accordingly, if, contrary to such an agreement, the partners upon dissolution provide their clients with representation options that do not inform them of the continuing duties to the partnership, the client's choice of representation will prevail. In such case, the partner not selected by the client cannot belatedly invoke the partnership agreement to enforce his or her participation in the division of after-realized contingent fees. *But see Ruby v. Abington Mem. Hosp.*, 50 A.3d 128, 136–37 (Pa.Super.2012) (applying the *Jewel* court's

rationale, that duties among partners in a dissolved firm are inapposite to a client's choice of representation, to an employment agreement between a firm and an associate separated from that firm). The *Ruby* Court did not focus on what options had been presented to the client in that case when he chose to retain the departing associate's new firm, or on whether the original firm acquiesced in presenting those options. To the extent that *Ruby* is inconsistent with my interpretation of the duty of attorneys to inform their clients of the options available for continued representation when the attorneys' relationship with their firm alters and with our Commonwealth's policy to protect the clients' subsequent choices, I would disapprove its holding.

In my view, the continuing obligations an attorney may have to a dissolved partnership is a concern of the client **before** the contingency occurs and the fee is paid. Certainly, whether an attorney acts individually or as a partner winding up partnership affairs implicates issues relevant to a client's informed choice of representation. The fact that an attorney may receive only a portion of a fee may, in the client's view, affect his or her confidence in the attorney's incentive to optimally pursue the case. A client may also be concerned about divided loyalty between the client and the former partnership, about potential animosity connected with the dissolution, and about the effects on privilege and sharing of information between the former partners.

In *Ellerby,* the Illinois court opined that allowing a client to continue with a former partner independent of continued partnership duties

> would encourage partners of a law partnership facing dissolution to make attempts to convince clients with cases having the most lucrative potential to hire them individually and discharge the partnership. This sort of case-chasing by attorneys should not be encouraged. Moreover, it places the clients of the dissolved law partnership precisely where they should not be placed; in the middle of a dispute among the partners over money.

*Ellerby, supra* at 417. However, the rule espoused by the Majority would encourage a converse competition. If an attorney's expected return on a case is diminished due to partnership obligations, the attorney may encourage clients to proceed with the other partner, knowing they will profit without having to expend a concomitant effort. In addition, as noted, there is nothing preventing a partnership from agreeing to an allocation of cases per the clients' choices without regard to winding up or division of fees. There is no rule or policy preventing such an agreement, which could equally subject the clients to competition between the attorneys over money.[10]

Professor Herbert M. Kritzer, of the University of Wisconsin School of Law has described factors affecting an attorney's decision to engage in contingency fee cases.

> The popular image of the contingencies involved in the contingency fee does not fully represent the way the fee works. The obvious contingency is that the lawyer risks receiving nothing if he or she fails to recover for the client. For most contingency fee lawyers this is probably the least important contingency. Rational lawyers want to screen out cases with a low probability of obtaining a recovery. **The more important contingencies facing lawyers are the uncertainties over the amount of the recovery and amount of investment by the lawyer that will be necessary to obtain the recovery.**

Herbert M. Kritzer, *The Wages of Risk: The Returns of Contingency Fee Legal Practice,* 47 DePaul L.Rev. 267, 270–271 (1998) (emphasis added).[11]

---

**10.** Presumably, attorneys will be constrained from improper conduct in soliciting clients or obfuscating client choice by the applicable Rules of Professional Conduct and exposure to civil action. *See Adler, supra.*

**11.** For example, a complex personal injury claim, based upon the theory of product liability or medical negligence, may require the expenditure of costs in the tens of thousands of dollars. The client may have signed a fee agreement by which the lawyer would be entitled to one third of the recovery in return in part for his risk in the outlay of expenses. However, in cases of dissolution, because of his or her obligation to former partners, the return to the lawyer trying the case may be ten percent or less. A client may legitimately

To reiterate my point, it is for the client to determine the relative importance these factors will bear on his or her decision about future representation when faced with the dissolution of their existing counsel's partnership. It is the attorneys' obligation to ensure the clients possess a full awareness of their options in order to make an informed choice.

In sum, I believe that the default position directed by the UPA with respect to the treatment of contingent fee cases where the contingency is unrealized at the time a partnership engaged in legal practice dissolves, is subordinated to the rights of the client to make an informed decision relative to continued representation by the partnership, by any one partner, or by other counsel. In the instant case, the parties agreed on the language contained in the letters advising E & H's clients of the options they had relative to future representation after the dissolution of the partnerships. That language did not include the default position of the UPA, *i.e.*, that either partner, if continuing with supervision of the case, did so on behalf of the partnership in winding up partnership affairs. Rather the clients were given the choice of hiring either partner in his respective new firm or hiring alternative counsel. Appellant cannot now invoke the UPA to undermine the informed choices made by E & H's clients. For these reasons, I would reverse the decision of the trial court granting Appellee's post-trial motion and direct the reinstatement of the trial court's July 1, 2010 verdict.

be concerned whether the attorney is still going to be motivated to advance the costs of