**William O. WELMAN, Brian D. Hively, and Barbara A. Godley, Plaintiffs–Respondents,**

v.

**Cameron Bunting PARKER, Defendant–Appellant.**

No. SD 30016.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 19, 2010.

Motion for Rehearing and Transfer Denied Dec. 10, 2010.

Application for Transfer Denied Jan. 25, 2011.

---

John M. Albright and Daniel T. Moore, Poplar Bluff, Mo, for Appellant.

James M. McClellan, Sikeston, Mo, for Respondents.

GARY W. LYNCH, Presiding Judge.

Attorney Cameron Bunting Parker appeals the trial court's judgment on an accounting with her former law partners, which included a contingent fee she received from a case that originated with Parker's former law partnership but was settled after she left that partnership. Parker contends that the trial court erred in concluding that the case remained an asset of her former law firm. She argues that a case belongs to no one other than the client, and clients are free to change their counsel at will. We agree. Because the trial court misdeclared and misapplied the law on the nature of the attorney-client relationship and what an attorney or law firm can recover upon being discharged, we reverse the judgment and remand the cause for further proceedings.

### Factual and Procedural Background

For two years, from January 1, 2003, until December 31, 2004, Parker was a partner in a law firm called Welman, Hively, Godley & Parker L.L.P., a limited liability partnership. The law firm had no written partnership agreement. In late November 2004, Parker informed the plaintiffs, who were the other three partners, William Welman, Brian Hively, and Barbara Godley (collectively, "former partners"), that she would be withdrawing from the firm effective December 31, 2004. Within a week of her announcement, Parker and her former partners met to discuss the process of dissolving the partnership and winding up its affairs. No agreement as to the dissolution of the partnership was reached. As a result of these discussions, however, Parker took some of the case files with her when she left, and her former partners kept some of

the case files. Although requested to do so, Parker did not further participate in a significant way in an accounting or full settlement of the partnership.

The major dispute concerning the dissolution of the partnership involved a pending personal-injury case in which the firm had been representing plaintiff Charles Yates, who injured himself while working as a truck driver. Yates signed a contingent-fee contract for representation by the Welman law firm in 2002, when Parker was an associate with the firm. Since its inception, Parker was the attorney most closely involved in the case. At the time Parker formally withdrew on December 31, 2004, she was the only attorney at the firm with whom Yates had ever communicated about his case. When Parker decided to leave the partnership, Yates received a letter from Parker asking whether he desired to stay with the Welman firm or continue to have Parker represent him, and he elected to continue with Parker, eventually signing a contingent-fee contract with Parker's new law firm.

In January 2005, Parker became a partner at Welch, Todd & Parker Law Firm. A month later, in February 2005, Parker filed a lawsuit in Yates's case, and in January 2006, Parker reached a settlement with the defendant insurance company in the amount of $362,426.40. Parker and her new law firm received a contingent fee of $119,600.00 from the settlement.

After Yates's case settled, Parker's former partners filed suit in September 2007, seeking an accounting, wind-up, and termination of the Welman partnership. The case was tried without a jury, and the trial court filed an opinion pursuant to Rule 73.01(c).[1] Relying on an Illinois decision, *Ellerby v. Spiezer*, 138 Ill.App.3d 77, 92 Ill.Dec. 602, 485 N.E.2d 413 (1985), the trial court determined as a matter of law that "contingent fee cases pending at the time of the dissolution continue to be partnership business after dissolution, and fees from those cases are assets of the partnership." Furthermore, even though the trial court acknowledged that clients have the right to discharge their attorney at will, it stated that a partner is "not entitled to have the client discharge the partnership and hire the partner individually."

The trial court accordingly concluded that the entire $119,600.00 contingent fee that Parker received in the Yates case belonged not to Parker but to the dissolved partnership. In addition, the trial court determined that the $12,070.00 fee that Parker collected in a probate matter in 2005 also belonged to the dissolved partnership, since it was a case that belonged to the partnership before Parker took the file when she left. By including the fees collected in the two cases, the trial court calculated that Parker collected $131,607.00 in partnership assets, and, after deducting her interest, Parker owed her former partners $106,954.00. Parker timely appealed.

### Standard of Review

■ In court-tried cases, our standard of review generally is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Accordingly, "we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or misapplies the law." *State ex rel. Cravens v. Nixon*, 234 S.W.3d 442, 445 (Mo.App.2007). In reviewing the trial court's decision, we review the evidence and all reasonable inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Id.* at 446.

---

1. References to rules are to Missouri Court Rules (2010), unless otherwise indicated.

## Discussion

In Parker's sole point on appeal, she contends the trial court misdeclared the law in concluding that a contingent-fee contract remains an asset of a dissolved law partnership because Missouri has abandoned the "contract approach" to the termination of the attorney-client relationship, instead adopting an approach based on quantum meruit. According to Parker, this means that "it is the client who has the unfettered right to select his or her lawyer, with the lawyer's interest being limited to the reasonable value of his or her work[.]"

█ The precise issue in this case— who, as between a withdrawing partner and the former partners, is entitled to the contingent fee from a matter that was pending at the time of the dissolution of the law firm handling it—has not been directly decided by a Missouri appellate court. The trial court looked to and relied on opinions from foreign jurisdictions, primarily *Ellerby,* to reach the conclusion that contingent-fee cases and the attorney fees they garner remain assets of the dissolved partnership. Two Supreme Court of Missouri decisions, however, lead us to the conclusion that once the firm's contingent-fee contract is terminated by the client by entering into a subsequent contingent-fee contract with another law firm, even if that firm includes the withdrawn partner, the only asset of the dissolved law firm is its right to recover the reasonable value of its services rendered.

In *Plaza Shoe Store, Inc. v. Hermel, Inc.,* 636 S.W.2d 53 (Mo. banc 1982), our Supreme Court addressed the client's obligation to compensate a lawyer or law firm upon termination of the relationship by the client. In that case, Plaza Shoe Store hired a law firm under a contingent-fee arrangement to bring an action for alleged negligence in the design and construction of a building that it leased. *Id.* at 53–54. The law firm provided quality representation to Plaza Shoe Store and put extensive work into the case, but Plaza Shoe Store discharged the firm without cause before judgment or settlement had been reached. *Id.* at 55. Prior to the discharge, the law firm had received a settlement offer of $50,000.00 from the defendant and recommended that Plaza Shoe Store accept this offer, and the law firm sought one-third of that amount, plus expenses, from their former client at trial. *Id.* The trial court awarded the law firm $17,242.00, an amount greater than the reasonable value of the services it provided, and Plaza Shoe Store appealed. *Id.*

The Court concluded that an attorney retained by a client under a contingent-fee contract who is discharged without cause before settlement or judgment of the matter is *not* entitled to recover under the contingent-fee contract, but is instead limited "to the reasonable value of services rendered, not to exceed the contracted fee, and payable only upon the occurrence of the contingency." *Id. See also Int'l Materials Corp. v. Sun Corp., Inc.,* 824 S.W.2d 890, 895 (Mo. banc 1992) (citing *Plaza Shoe Store, Inc.* for the proposition that "[o]nce termination of the lawyer-client relationship has occurred before completion of a contingent fee contract, the lawyers' only recovery could be in quantum meruit for benefits conferred."). Thus, the trial court's judgment was reversed and remanded for entry of judgment in accordance with the reasonable value of the services the law firm rendered to Plaza Shoe Store. *Plaza Shoe Store, Inc.,* 636 S.W.2d at 60.

█ The Court in *Plaza Shoe Store, Inc.* referenced its holding as the "modern rule" of attorney recovery, in contrast to the "contract rule" that Missouri adhered to previously, under which the employment

agreement between attorney and client is treated like any other employment contract. *Id.* at 57. *See also Goldstein and Price, L.C. v. Tonkin & Mondl, L.C.,* 974 S.W.2d 543, 547–48 (Mo.App.1998). The modern rule, whereby the discharged attorney's recovery is limited to the reasonable value of his services on a quantum meruit theory, is optimal because it "evidences a greater sensitivity to the desired public policy of allowing a client to discharge his attorney at any time, without undue burden, in a manner that is not cost prohibitive[.]" *Plaza Shoe Store, Inc.,* 636 S.W.2d at 60. Courts that adhere to the modern rule take into account the "special confidence and trust which should set the attorney-client relationship apart from other employment relationships," so that if a client becomes dissatisfied with his attorney at any time, he may release that attorney, with or without cause, and hire another. *Id.* at 58.

■ Another Supreme Court decision, *Matter of Cupples,* 952 S.W.2d 226 (Mo. banc 1997), addressed the duties attorneys in a law firm have toward their clients and each other when an attorney withdraws from the firm. First, the Court emphasized the nature of the attorney-client relationship: "Clients are not the 'possession' of anyone, but to the contrary, control who represent them.... The client's files belong to the client, not to the attorney representing the client. The client may direct an attorney or firm to transmit the file to newly retained counsel." *Cupples,* 952 S.W.2d at 234. The Court held that where an attorney withdraws from a law firm, it is incumbent on both the attorney and the law firm to "inform firm clients of any *material* change in representation and to obtain the clients' informed direction as to how the client wishes its work to be handled." *Id.* at 236. Additionally, the withdrawing attorney and the law firm

have a mutual duty toward each other to act in good faith in winding up the firm's business and to act in a professional and competent manner in handling the clients' files in accordance with the clients' directions. *Id.*

■ The *Ellerby* holding—fees from pending contingent-fee contracts are assets of the dissolved partnership—on the other hand, was based upon the premise that the withdrawing partner "was not entitled to take any action with respect to the [partnership's] unfinished business leading to purely personal gain, such as having the client discharge the partnership and hire him individually." *Ellerby,* 92 Ill.Dec. 602, 485 N.E.2d at 416; *see Thompson v. Hiter,* 356 Ill.App.3d 574, 292 Ill.Dec. 362, 826 N.E.2d 503, 514 (2005) (recognizing this premise but refusing to extend it to a joint venture on a single case). This premise, however, is undermined by *Cupples,* which requires both the law firm and the withdrawing partner to advise the client of this material change in representation and to obtain the client's informed direction as to how the client desires to be represented from that point forward. *Cupples,* 952 S.W.2d at 234. Under Missouri law, the decision as to whether the contingent-fee contract remains an asset of the dissolved partnership is solely the decision of the informed client who has the free choice to further engage the services of the former partners, the withdrawing partner—either individually or as a partner in a new partnership—or an entirely different attorney or law firm.

■ Given these legal principles, the trial court's reliance upon the "contract approach" in *Ellerby* was misplaced. Consistent with *Plaza Shoe Store, Inc.* and *Cupples,* we hold that if a law firm is retained by a client on a contingent-fee basis and the client elects to hire a different law firm after the first firm dissolves and before

judgment or a settlement has been reached on his or her case, the dissolved law firm is only entitled to recover the reasonable value of the services it provided. This amount cannot exceed the original contracted fee and is payable only upon the occurrence of the contingency. The contingent fee achieved from eventual judgment or settlement is not an asset of the dissolved firm. In the present case, therefore, we conclude that Parker's former partners should be able to recover only their share of the reasonable value of the legal services the partnership provided to Yates before the partnership dissolved on December 31, 2004.

▮ Following *Cupples,* if the dissolution is caused by an attorney's withdrawal and that attorney has represented the client while at the law firm, both the law firm and departing attorney have a duty to communicate the change in circumstances to the client. The primary purpose of the communication is to "assist these clients in determining whether their legal work should remain with the law firm, be transferred to the departing attorney, or be transferred elsewhere." *Cupples,* 952 S.W.2d at 235. Here, Parker notified Yates in a letter that she was leaving the Welman firm, and Yates chose to keep his case with Parker and transfer his file to her new law firm with which he thereafter entered into a contingent-fee agreement.[2]

▮ The trial court's determination that "contingent fee cases pending at the time of dissolution continue to be partnership business after dissolution, and fees from those cases are assets of the partnership[,]" as applied to this particular set of facts, is a misdeclaration of the law, and the trial court's judgment awarding the entire contingent fee in the Yates case to

the former partners is a misapplication of the law. Clients are free to discharge the law firm or attorney who represents them at any time and hire new counsel; requiring them to pay a double contingent fee would hinder this freedom. *Plaza Shoe Store, Inc.,* 636 S.W.2d at 58. Similarly, the trial court's limited view of the limited compensation available to the withdrawing partner for services rendered to client after withdrawal, should the client choose to have the withdrawing partner continue to represent him or her, would unduly impinge upon the client's perceived freedom to change attorneys without cause and could have a " 'chilling effect' " upon the choice of that option by the client. *See id.* (quoting *Rosenberg v. Levin,* 409 So.2d 1016, 1021 (Fla.1982)).

▮ Further, the trial court erroneously determined that a withdrawing partner is not entitled to have the "client discharge the partnership and hire the partner individually." This statement contradicts the fundamental right of clients to freely choose their counsel. *See Cupples,* 952 S.W.2d at 234. It also is diametrically opposed to the holding in *Cupples* that upon proper notice the client is free to "remain with the law firm, be transferred to the departing attorney, or be transferred elsewhere." *Id.* at 235. Clients are not the "property" of the attorney or law firm who represents their interests; clients are free to discharge their attorney at any time, for whatever reason. *Id.* at 234. If a client terminates a contingent-fee contract with a law firm without cause before the contingency occurs, the law firm can recover only the reasonable value of its services to the client. *See Plaza Shoe Store, Inc.,* 636 S.W.2d at 60. We see no reason why this rule should not apply

---

**2.** Counsel for the former partners conceded at oral argument that Parker's letter to Yates complied with all ethical requirements as set forth in *Cupples.*

where the client's termination is triggered by the law firm's dissolution.

Parker's former partners believe that *Plaza Shoe Store, Inc.* is not on point and has no precedential value for this decision because it does not relate to the dissolution, wind-up, and termination of a law partnership. It is true that *Plaza Shoe Store, Inc.* does not specifically deal with partnership dissolution, and the trial court was correct to rely on Missouri's Uniform Partnership Law ("UPL")[3] in orchestrating the wind-up and termination of the dissolved partnership. The UPL, however, does not substantively resolve the issue as to which party is entitled to the contingent fee from Yates's settlement. That issue is determined by the principles enunciated in *Plaza Shoe Store, Inc.* and *Cupples,* as discussed supra. Yates's execution of a contingent-fee agreement with the new law firm terminated the contingent-fee agreement with the dissolved law firm, leaving it with only a claim for the reasonable value of its services rendered before such termination. That claim, not the terminated contingent-fee agreement, is the asset of the dissolved partnership involved in the wind-up of its affairs and the partnership's termination in accordance with the procedures in the UPL.

### Decision

The trial court's judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

SCOTT, C.J., and RAHMEYER, J., concur.

---

3. The UPL is located in Chapter 358 of the Missouri Revised Statutes.