**William O. WELMAN, Brian D. Hively and Barbara A. Godley, Plaintiffs–Respondents,**

v.

**Cameron Bunting PARKER, Defendant–Appellant.**

No. SD 31490.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 4, 2013.

John M. Albright, Poplar Bluff, MO, for appellant.

James M. McClellan, Sikeston, MO, for respondents.

**DON E. BURRELL, J.**

The parties are former partners in the law firm of Welman, Hively, Godley & Parker, L.L.P. ("the partnership"). After Appellant Cameron Bunting Parker ("Parker") left the firm, her former partners, William O. Welman, Brian D. Hively, and Barbara A. Godley ("former partners"), brought an action for an accounting in an attempt to recover legal fees Parker had received after leaving the firm in cases that former partners claimed were assets of the partnership.[1] After a bench trial, the trial court entered a $106,954 judgment in favor of former partners.

Parker successfully appealed the judgment in *Welman v. Parker,* 328 S.W.3d 451 (Mo.App. S.D.2010) (*"Welman I"*) (in which we held that Missouri had abandoned the "contract approach" to the termination of the attorney-client relationship and had adopted instead an approach based on *quantum meruit*). *Welman I* specifically directed that in accounting for a terminated contingent fee contract as an asset under the Uniform Partnership Law ("UPL"), "the only asset of the dissolved law firm is its right to recover the reasonable value of its services rendered." *Id.* at 455. After reversing the judgment we remanded the case to allow the trial court to resolve the parties' dispute by applying the appropriate legal standard as set forth in our opinion. *Id.* at 458. After remand, the trial court did just that; it decided the matter based upon *quantum meruit* and entered a net judgment in favor of former partners against Parker in the amount of $30,607.00.[2]

---

1. Parker filed a counterclaim for "an Order requiring [former partners] to give a full accounting of all assets" and "to order [former partners] to compensate [Parker] for her share of assets left with the law firm[.]"

2. The trial court's award was based upon its determination of the expenses the partnership had incurred plus the reasonable value of the services it had rendered on the cases at issue up to the time Parker withdrew from the partnership, offset by Parker's claims against the partnership.

Parker now appeals that judgment, alleging that: 1) the trial court erred in entering a judgment based upon *quantum meruit* because that particular cause of action was not asserted in former partners' petition; and 2) the trial court's award was not supported by substantial evidence. Finding no merit in either claim, we affirm.

### Applicable Principles of Review

■ We must affirm the judgment in a bench-tried case "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We presume that the trial court's judgment is correct, and it is the appellant's burden to show that it is incorrect. *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo. App. S.D.2010). In determining whether Parker has met that burden, we view the evidence and the inferences that may reasonably be drawn from it in the light most favorable to the judgment, and we disregard all contrary evidence and inferences. *Id.* at 183.

### Factual and Procedural Background

Upon remand, neither party requested that the trial court hear any additional evidence before deciding the case. We therefore recite the evidence adduced at the 2009 bench trial as viewed in the light most favorable to the judgment.

Parker began working as an associate at the partnership in 1998. In 2003, she became a partner. The four partners did not enter into a written partnership agreement. In late 2004, Parker announced that she would be withdrawing from the partnership, effective December 31, 2004, to join a different firm. Prior to her departure, the four partners met to discuss how they should wind-up and dissolve the partnership. During that discussion, former partners asked Parker to provide them with a list of the active client files she anticipated taking with her to her new firm. Former partners indicated that Parker would also be given discretion as to what accounts receivable she could collect before departing.[3]

At the time of Parker's departure, there were pending a number of "major cases" on which she had been working. Former partners specifically addressed three of those cases in the parties' final meeting.[4] During that meeting, Parker agreed to wrap up a personal injury case the firm had taken on a contingency fee basis—the largest of the pending cases at issue ("the Yates case"). They did not discuss how any proceeds of the Yates case or any other pending case would be divided.

Yates became a client of and executed a representation agreement with the partnership in 2002. The partnership handled a number of different matters for Yates. Parker did some work on a workers compensation claim for Yates, and she was the partner who had primarily worked on the

---

3. As part of becoming a partner, Parker was given an interest in existing firm assets, including accounts receivable based on work in progress. She also received draws twice per month. In exchange, Parker became responsible for existing partnership liabilities. Parker, along with former partners, also executed three promissory notes totaling $25,000.

4. We refer to these cases by using the surname of the client. The Yates case and the Hall case are addressed in detail *infra*. Two other cases, the Blagg case, which consisted of a worker's compensation matter and a personal injury matter, and the Martin wrongful death suit were the two other "major cases" discussed at the parties' final meeting. Fees related to the Blagg and Martin cases are not at issue in this appeal.

Yates case, with assistance from Hively. The partnership advanced money for medical records in the Yates case and had incurred the expense of engaging a vocational expert. An initial settlement demand was made in 2003, and a counter demand was made in early 2004. No progress was made toward either mediating or resolving the case through 2004. Plaintiff's Exhibits 3 and 5, admitted into evidence, documented the costs advanced and work expended by the partnership on the Yates case.

Yates elected to have Parker continue to represent him on his personal injury case, and he signed a new contingency contract with her after she joined her new firm in January 2005. Parker filed a petition in the Yates case after she left the partnership. She, along with one of her new partners, then talked to the adjustor and lawyer for the other side. No witnesses were deposed, no mediation occurred, and the only expense the new firm incurred was the filing fee. Parker did not keep track of her time at her new firm. Parker ultimately settled the Yates case in early 2006. From that settlement, Parker's new firm received a $119,600.00 fee, $60,000 of which was apportioned to Parker. None of the Yates case fee was paid to the partnership.

Parker also took the Hall case, a decedent estate matter, with her when she left the partnership, although she failed to include it in the list of cases she planned to take with her. While still a partner in the partnership, Parker had created a closing inventory of Hall's property while working on a related guardianship. Hall passed away in 2003, and his decedent's estate was opened in March 2004. The partnership had expended $610.00 for publication and filing fees in the Hall case. When the probate clerk contacted former partners about the Hall case, former partners discovered that they no longer had the case file and contacted Parker. After leaving the partnership, Parker filed an inventory in the Hall case that was identical to the inventory she had prepared while working at the partnership on Hall's guardianship. In 2005, Parker filed a request for attorney fees in the Hall case in the amount of $12,070.00. Parker did not recall if this fee was based on an hourly rate or a percentage of the value of the estate.[5]

Godley prepared a settlement proposal in conjunction with the partnership wind-up (Exhibit 1A), which she attempted to discuss with Parker prior to Parker leaving the firm. Parker communicated to Godley in writing some of her concerns with the proposal, but she never met with Godley to discuss the proposed settlement in detail.

After our remand in *Welman I*, Parker provided the trial court with a proposed judgment, which reiterated that Parker had "also filed a counterclaim for a full accounting and payment for her share of the partnership property." After Parker asserted in her proposed findings that former partners' petition did not include a claim based on *quantum meruit* and that they did not seek leave to file an amended petition after the case was remanded, former partners filed a motion to take up their previously filed motion to amend their pleadings to conform to the evidence. As to the substance of their claim for attorney fees, former partners relied on the evidence previously submitted.

The trial court found the reasonable value of services rendered by the partnership

---

5. During the trial, the trial court read a portion of the court file for the Hall case and observed that, "[I]t doesn't have any basis that I can see based upon the value of the statement for the hours worked[.]"

on the Yates case to be $30,000.00, and it found the reasonable value of the partnership's services on the Hall case to be $7,000.00. In accordance with those findings, the trial court entered its net judgment in favor of former partners as set out above. In response to former partners' motion to take up their previously filed motion to amend their pleadings to conform to the evidence, the judgment stated:

> Although the docket entries and the transcript do not reflect that the [trial c]ourt ruled on Plaintiffs' motion on the day of trial, the case file contains [former partners'] Motion to Amend Pleadings to Conform to Evidence filed on the day of the trial, which shows on its face in the Judge's handwriting and signed by him that the [trial c]ourt granted the motion on June 26, 2009. The [trial c]ourt has granted the motion and considers all the matters presented to the [trial c]ourt by the Parties in light of the Court of Appeals opinion.

Parker now appeals.

## Point I—Failure to Plead Quantum Meruit

Parker's first point asserts that the trial court had no authority to enter a judgment based on *quantum meruit* because former partners did not plead it, one former partner "individually testified there was no claim being made based on *quantum meruit*, ... and [former partners'] counsel advised the [trial] court [that] the lawsuit was premised on including the entire contingency fee [from the Yates case] in winding-up of the partnership affairs." We disagree.

■ The scope of the trial court's authority on remand is defined by the appellate court's mandate, and "[t]he trial court must render judgment in accord with our mandate and opinion." *Gerken v. Sherman*, 351 S.W.3d 1, 6 (Mo.App. W.D.2011).

"There are two types of remands: (1) a general remand, which does not provide specific direction and leaves all issues open to consideration in the new trial; and (2) a remand with directions, which requires the trial court to enter a judgment in conformity with the mandate." *Guidry v. Charter Commc'ns, Inc.*, 308 S.W.3d 765, 768 (Mo. App. E.D.2010).

■ Parker is correct that our mandate in *Welman I* read like a general remand, directing "that said cause is remanded to the said Circuit Court of Dunklin County for further proceedings, all consistent with the opinion of this Court herein delivered[.]" Parker asserts that former partners seek "to find the directions on remand in the body of the opinion and convert that into the law of the case." Although Parker apparently believes such a process to be improper, the type of search she criticizes is exactly what is necessary because a general remand cannot be read in isolation. Instead, "[a] general remand has the effect of a direction to proceed in accordance with the holdings entered by the opinion of the appellate court as the law of the case." *Outcom, Inc. v. City of Lake St. Louis*, 996 S.W.2d 571, 574 (Mo.App. E.D.1999).

■ "On remand, proceedings in the trial court should be in accordance with both the mandate and the result contemplated in the opinion." *Frost v. Liberty Mut. Ins. Co.*, 813 S.W.2d 302, 304 (Mo. banc 1991). "The mandate serves the purpose of communicating the judgment to the lower court, and the opinion, which is a part thereof, serves in an interpretative function." *Durwood v. Dubinsky*, 361 S.W.2d 779, 783 (Mo. banc 1962) (internal citation omitted). "It is well settled that the mandate is not to be read and applied in a vacuum. The opinion is part of the mandate and must be used to interpret the

mandate itself." *McDonald v. McDonald,* 795 S.W.2d 626, 627 (Mo.App. E.D.1990).

Our *Welman I* opinion held that

> if a law firm is retained by a client on a contingent-fee basis and the client elects to hire a different law firm after the first firm dissolves and before judgment or a settlement has been reached on his or her case, the dissolved law firm is only entitled to recover the reasonable value of the services it provided.... In the present case, therefore, we conclude that Parker's former partners should be able to recover only their share of the reasonable value of the legal services the partnership provided to Yates before the partnership dissolved on December 31, 2004.

328 S.W.3d at 456–57. We further held that

> the trial court was correct to rely on Missouri's [UPL] in orchestrating the wind-up and termination of the dissolved partnership. The UPL, however, does not substantively resolve the issue as to which party is entitled to the contingent fee from Yates's settlement. That issue is determined by the principles enunciated in *Plaza Shoe Store, Inc.* [*v. Hermel, Inc.,* 636 S.W.2d 53 (Mo. banc 1982)] and [*Matter of*] *Cupples*[, 952 S.W.2d 226 (Mo. banc 1997)], as discussed supra. Yates's execution of a contingent fee agreement with the new law firm terminated the contingent-fee agreement with the dissolved law firm, leaving it with only a claim for the reasonable value of its services rendered before such termination. That claim, not the terminated contingent-fee agreement, is the asset of the dissolved partnership involved in the wind-up of its affairs and the partnership's termination

in accordance with the procedures in the UPL.

*Id.* at 458. (Footnote omitted.)

▮ We expressly adopted a reasonable value of services provided approach in our *Welman I* opinion, and the trial court was thereby bound to employ that approach on remand as the law of the case in valuing the unfinished cases as assets of the partnership. As a result, whether *quantum meruit* was pleaded (either initially or as a result of the sustaining of a post-trial motion to conform the pleadings to the evidence adduced at trial) is irrelevant; the trial court did exactly what it was specifically directed to do by this court in *Welman I*—it entered a judgment based upon its determination of the reasonable value of the services rendered by the partnership. Point I is denied.[6]

### Point II—Evidence of Reasonable Value

Parker's second point claims that the trial court's assessment of the reasonable value of the services rendered by the partnership is not supported by substantial evidence. We disagree.

▮ Substantial evidence is evidence that may be credited by the trier of fact as true and which has probative force upon the issues to be decided. *Houston,* 317 S.W.3d at 186. Because we view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the judgment, "any citation to or reliance upon evidence and inferences contrary to the judgment is irrelevant and immaterial to an appellant's point and argument challenging a factual proposition necessary to sustain the judgment as being not supported by substantial evidence." *Id.* We also "defer to the trial court's

---

**6.** In any event, neither of Parker's points challenges the portion of the judgment that granted former partners' request to amend the pleadings to conform to the evidence. In the absence of such demonstrated error, the pleadings, as amended, asserted such a claim.

superior position to make credibility determinations." *Id.*

A not-supported-by-substantial-evidence challenge requires completion of three sequential steps:

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2) identify all of the favorable evidence in the record supporting the existence of that proposition; and,

(3) demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition.

*Id.* at 187.

 "The trial court is considered an expert on the necessity, reasonableness, and value of attorney's fees." *Travis v. Travis,* 174 S.W.3d 67, 71 (Mo.App. W.D. 2005). "The determination of reasonable attorney's fees is in the sound discretion of the trial court. This determination shall not be reversed unless the amount awarded is arbitrarily arrived at or is so unreasonable as to indicate indifference and a lack of proper judicial consideration." *Realty Res., Inc. v. True Docugraphics, Inc.,* 312 S.W.3d 393, 400 (Mo.App. E.D.2010) (internal citation omitted). A trial court is considered an expert on the question of attorney's fees even if it did not preside over the underlying trial, and it may make an award of attorney fees after receiving evidence about the services rendered in support of the fee being claimed. *See Klinkerfuss v. Cronin,* 289 S.W.3d 607, 613–14 (Mo.App. E.D.2009) (where the tri-

al court took judicial notice of the record from the underlying case, heard live testimony on fees, received 19 exhibits, and received affidavits from the billing attorneys).[7]

 In challenging the factual proposition that the reasonable value of the partnership's services was $37,000, Parker concedes that the partnership worked on the Yates case, but she asserts that the trial court did not clarify "how many hours were being considered in the calculation of the judgment." Parker further maintains that the "testimony on the [Hall case] involved work that self-evidently had a nominal value." In regard to the Yates case, Parker argues that "if there were between 11.5 and 20.65 hours of work done" then "[a] judgment awarding something that appears to be in the neighborhood of ten times the standard hourly rate is one that is not supported by substantial evidence." She concludes, therefore, that "[t]here is no substantial evidence supporting the trial court's inclusion of $37,000.00 from the Yates and Hall cases in the final assets of the partnership to be distributed."

 Parker's conclusion necessarily fails because her premise is faulty; she points to no authority suggesting that the trial court was required to base its calculation of the reasonable value of the partnership's services solely by applying a reasonable hourly rate. In fact, she specifically acknowledges that "a series of factors" may be considered.

To determine what constitutes a reasonable attorneys' fee value in quantum meruit, consideration must be given to: "(1) the time, nature, character and

---

7. The fact that a trial court presided over the underlying trial simply affects the evidentiary support necessary to justify the award. *See id.* at 614; *Keller v. Keller,* 224 S.W.3d 73, 83 (Mo.App. S.D.2007) ("[T]he judge who personally tries a case and is acquainted with all the issues involved is in a position to fix the amount of attorneys' fees without the aid of evidence" (quoting *Agnew v. Johnson,* 352 Mo. 222, 176 S.W.2d 489, 494 (1943))).

amount of services rendered; (2) the nature and importance of the litigation; (3) the degree of responsibility imposed on or incurred by the attorney; (4) the amount of property or money involved; (5) the degree of professional ability, skill and experience that was called for and used; and (6) the result that was achieved."

*McCoy v. The Hershewe Law Firm, P.C.*, 366 S.W.3d 586, 597 (Mo.App. W.D.2012) (quoting *Turpin v. Anderson*, 957 S.W.2d 421, 427 (Mo.App. W.D.1997)). These factors are not exclusive, and their application will vary based on the particular circumstances of the case. *McCoy*, 366 S.W.3d at 597. And while Parker asserts that a value based exclusively on the number of hours worked should have been applied, the trial court could not have compared the partnership's contributions to any such hourly contribution by Parker or her new partner because Parker and her new partner did not keep track of such time. More importantly, there was no evidence that the fees earned in either the Yates or Hall cases were themselves based upon the application of an hourly rate.

 Exhibit 5 documented the nature of the work performed by the partnership on the Yates case. Hively also testified about the preparation of the settlement demand and resulting negotiations that had taken place. Exhibit 3 and Hively's testimony also documented the expenses advanced by the partnership in prosecuting the Yates case. With respect to the Hall case, the trial court took judicial notice of the court file.[8] Godley testified that she personally reviewed the court

file to determine how much of the work done on it could be attributed to the partnership, and she concluded that the work done by the partnership was essentially identical to the work Parker later filed with the probate division of the circuit court. Although the trial court here did not preside over the Yates and Hall cases, it was presented with evidence about the nature and comparative amount of work the various attorneys had engaged in while working on those matters. The trial court was free to credit this evidence, and in light of the relevant factors set forth in *McCoy*, it was probative of the value of the services rendered by the partnership. *See* 366 S.W.3d at 597.

In discussing the fee awarded in *McCoy*, the western district of our court observed, "While judges could easily differ on the determination of the reasonable value of the services provided by [the former law firm], we know of no authority that would justify an attempt by this court, as a reviewing court, to substitute our judgment for that of the trial court." 366 S.W.3d at 601. The same is true here. Substantial evidence supported the trial courts' award, and Parker has failed to demonstrate that the trial court abused its discretion in valuing the legal services rendered.

 Point II is also denied, and the judgment of the trial court is affirmed.[9]

JEFFREY W. BATES, J., and DANIEL E. SCOTT, P.J., concur.

---

8. Parker failed to deposit the contents of these court files with this court, and we cannot simply "take a corresponding judicial notice of facts judicially noticed by the trial court." *State v. Johnson*, 150 S.W.3d 132, 137 (Mo. App. E.D.2004). Because the court files have

not been deposited, we presume their contents would be favorable to the judgment. *See Stuart v. Ford*, 292 S.W.3d 508, 515 n. 3 (Mo.App. S.D.2009).

9. In conjunction with this second appeal, former partners have filed a "Motion and Memo-

---

randum for Frivolous Appeal" under Rule 84.19. "An appeal is frivolous if it presents no justiciable question and is so readily recognizable as devoid of merit on the face of the record that there is little prospect that it can ever succeed." *Dennis v. H & K Mach. Serv. Co.,* 186 S.W.3d 484, 487 (Mo.App. E.D. 2006). "This court awards damages under Rule 84.19 with great caution[.]" *Stiens v.*

*Stiens,* 231 S.W.3d 195, 200 (Mo.App. W.D. 2007). Although we ultimately find no merit in Parker's claims, we cannot say that her argument was "as readily recognizable as devoid of merit on the face" that it would warrant such damages. Therefore, former partners' motion for damages under Rule 84.19 is denied. All rule references are to Missouri Court Rules (2012).