

# Missouri Court of Appeals

### Southern District

### Division One

| | | |
|---|---|---|
| In Re the Marriage of: | ) | |
| Jeneffer Keet Bell and Mark Robert Bell, | ) | |
| | ) | |
| JENEFFER KEET, | ) | |
| f/k/a JENEFFER KEET BELL | ) | |
| | ) | |
| Petitioner-Respondent, | ) | No. SD33136 |
| | ) | Filed: 2-5-16 |
| v. | ) | |
| | ) | |
| MARK ROBERT BELL and | ) | |
| JIMMIE BELL, | ) | |
| | ) | |
| Respondents-Appellants. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Mark A. Powell, Associate Circuit Judge

## AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS

This is the second appeal arising from the dissolution proceeding involving the marriage of Mark Bell (Mark) and Jeneffer Bell (Jeneffer). *See Bell v. Bell*, 360 S.W.3d 270 (Mo. App. 2011) (*Bell I*).[1] Mark and his father, Jimmie Bell (Jimmie), appeal from the judgment entered by the trial court after further proceedings occurred on remand.

---

[1] Because all of the parties share the same surname, we refer to them by their first names for purposes of clarity.

Collectively, Mark and Jimmie assert seven points of alleged trial court error. We find merit in Jimmie's point that the trial court erred by holding Jimmie jointly responsible for attorney's fees incurred by Jeneffer. Therefore, we reverse that portion of the judgment, affirm in all other respects and remand the case for the entry of an amended judgment consistent with this opinion.

## Standard of Review

In this court-tried case, our review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and Rule 84.13(d). *Schubert v. Trailmobile Trailer, L.L.C.*, 111 S.W.3d 897, 899 (Mo. App. 2003).[2] The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Pelligreen v. Wood*, 111 S.W.3d 446, 450 (Mo. App. 2003).

In reviewing issues of fact, "[w]e view the evidence and reasonable inferences therefrom in the light most favorable to the decree and disregard all evidence to the contrary." *Selby v. Selby*, 149 S.W.3d 472, 482 (Mo. App. 2004). The credibility of witnesses and the weight to be given to their testimony is a matter for the trial court, which is free to believe none, part or all of the testimony of any witness. *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988).

## Factual and Procedural Background

### *Bell I*

Because of the intertwined nature of the issues and to promote a better understanding of the rationale for this decision, our opinion in this second appeal should be read in conjunction with our earlier opinion in *Bell I*. To avoid undue repetition, we will

---

[2] All references to rules are to Missouri Court Rules (2015). All references to statutes are to RSMo (2000).

2

presume the reader is generally familiar with **Bell I** and limit our recital of the facts from the prior appeal to those essential to our discussion of the issues addressed herein.

In Jeneffer's First Amended Petition, Mark was named as a party both individually and in his capacity as a trustee of the first and second Bell trusts. Jimmie was named as a party only in his capacity as a trustee of those same trusts. Count II of the petition alleged that Mark and Jimmie were engaged in a real estate partnership and conducted that business in their capacities as trustees. The prayer for relief asked the trial court to determine what part of the real estate so held was marital property and to divide the same as required by law.

The original judgment was entered in November 2009. Insofar as relevant here, the trial court decided that: (1) Mark was not the actual owner of various real estate parcels claimed by Jeneffer to be marital property; and (2) Mark's interests in various investment accounts, including a Schwab IRA, were his nonmarital property. Jeneffer appealed, and those issues were decided by this Court in **Bell I**.

With respect to the 89 parcels of real estate, we held that: (1) those properties were acquired after Mark and Jeneffer married; and (2) Mark failed to rebut the presumption that the real estate was marital property. **Bell I**, 360 S.W.3d at 281. As we explained in the opinion:

> The titling of the properties in Mark's name was meant to have legal consequences. Jimmie and Mark titled certain property in Mark's name in order to obtain at least $679,673.67 in financing from a bank. The financial statements that were presented to the bank were intended to have legal consequences. The income tax returns which claimed that Mark was the owner of the properties were done with the purpose of having legal consequences. We cannot ignore all of those representations that Mark acquired the properties subsequent to the marriage and now state that the properties were not acquired during the marriage due to a "misnomer." The representations by Jimmie and Mark Bell make no sense unless it was to hide the true character of the properties to the bank, to the IRS, and to Jeneffer. It puts this Court in a position of finding a fact contrary to the

3

representation of facts to the IRS and the financial institutions. This we cannot do. We must hold that the representations were true, that Mark owned the properties. Thus, the real estate was property acquired after the marriage. The testimony of every single witness indicates that Mark and Jimmie were engaged in some manner of a common business, the purchase and sale of real estate.

*Id*. at 280-81. Therefore, we concluded that "[t]he trial court erred in designating the real estate owned by Mark as Mark's separate property." *Id*. at 281.

With respect to the investment accounts, we also held that the trial court erred by designating all $195,980.90 of the Schwab IRA as Mark's separate property. *Id*. at 282. Based upon our review of the documentary evidence:

those documents did not provide enough information for a fact-finder to determine what proportions of the increase in value of the account were marital or nonmarital. Money contributions had to be made to the account during the marriage. If so, those contributions were marital property unless rebutted by clear and convincing evidence. There is no indication in the record of how such accounts increased so significantly in value without any additional contribution.

*Id*. at 282-83. Mark's name was also on an undisclosed passbook savings account with a value of $180,118.13 that was created after Mark and Jeneffer married. That account was presumed to be marital property and the record contained no evidence about why Mark's name was on it. Therefore, "we also remand[ed] for the consideration of the passbook accounts for further evidence at the trial court's discretion." *Id*. at 283. The original judgment was reversed, and the cause was remanded. *Id*. at 285. Our remand instructions stated that "the trial court may allow such additional discovery or enter such orders as necessary to ensure that it receives complete and accurate facts." *Id*. We also authorized the trial court to consider the appointment of a special master pursuant to Rule 68.01 to ensure compliance with discovery. *Bell I*, 360 S.W.3d at 285 n.19.

4

## *Proceedings on Remand*

On remand, the trial court determined that "exceptional circumstances exist in this case concerning discovery" and ordered that a special master be appointed to oversee all discovery issues. *See* Rule 68.01. Jeneffer also filed a motion, pursuant to Rule 52.04, to add Jimmie as an individual needed for just adjudication. After hearing oral argument of counsel on the matter, the trial court granted the motion.[3]

Following additional discovery, the trial court conducted two hearings at which it received additional evidence. On October 8, 2013, the trial court issued its First Amended Judgment and Decree of Dissolution of Marriage. Insofar as relevant here, the trial court made the following rulings: (1) Mark had an equity interest of $802,160 in the 85 real estate parcels that were marital property[4]; (2) the court imposed a constructive trust for the benefit of Mark with Jimmie being the constructive trustee for each of the 85 real estate parcels; (3) Jeneffer was entitled to a cash equalization award of $401,080 to be paid either by Mark or by Jimmie, as constructive trustee of Mark's interest in the 85 parcels of real estate; (4) $209,975.49 of Mark's Schwab IRA was marital property to be divided equally between Jeneffer and Mark; (5) Jeneffer was entitled to an award of $65,826.85 for attorney fees to be paid by Mark or by Jimmie; and (6) $6,740 in special master fees then due were to be paid by "Respondents." Mark and Jimmie appealed from the 2013 judgment.

---

[3] In relevant part, the docket entry stated: "THE COURT, HAVING REVIEWED AND CONSIDERED [Jeneffer's] MOTION TO ADD JIMMIE BELL AS AN INDIVIDUAL PARTY TO THIS ACTION, SUSTAINS SAID MOTION AND ORDERS JIMMY BELL ADDED AS AN INDIVIDUAL PARTY TO THIS ACTION."

[4] Although 89 real estate parcels were at issue in ***Bell I***, the number of real estate parcels at the time of rehearing had been reduced to 85 because four of the parcels had been sold.

*Jeneffer's Motion to Dismiss This Appeal as Not Timely Filed*

The trial court's amended judgment was entered on October 8, 2013. Mark and Jimmie filed their notice of appeal on January 22, 2014. Jeneffer has filed a motion to dismiss the appeal on the ground that the notice of appeal was not timely filed. We disagree and deny the motion.

Following entry of the trial court's judgment, Mark and Jimmie filed a timely "Motion for Rehearing or to Amend or Modify Judgment" on October 15, 2013. The motion sought a new trial or, in the alternative, a modification or amendment of the judgment. The record reflects no ruling on the motion.

To the extent the motion sought a rehearing before the trial judge, it was governed by Rule 130.13 and overruled by operation of law after 45 days elapsed without a ruling. *See* Rule 130.13(b); *Dunkle v. Dunkle*, 158 S.W.3d 823, 827 (Mo. App. 2005) (finding that "special rules," which exist for juvenile and family law matters tried before a family court commissioner, supersede all inconsistent statutes and rules); *Lenz v. Lenz*, 412 S.W.3d 487, 490 (Mo. App. 2013) (citing *Dunkle* with approval in discussing Rule 130.13).

A single motion may qualify as a motion for rehearing, a motion to amend the judgment or both. *Dunkle*, 158 S.W.3d at 831-32. Rule 130.13 does not supersede normal civil procedure rules with respect to a motion to amend the judgment. *Lenz*, 412 S.W.3d at 490; *Dunkle*, 158 S.W.3d at 831. Here, the alternative relief sought by the motion was a modification or amendment of the judgment. This aspect of the motion was overruled by operation of law 90 days after the motion was filed. Rule 81.05(a)(2)(A). Therefore, the trial court's judgment became final for purposes of appeal on January 13, 2014. *See id*. The notice of appeal was timely because it was filed within ten days after the judgment

6

became final.  *See* Rules 81.04(a), 81.05(a)(2)(A).  Accordingly, Jeneffer's motion to dismiss this appeal is denied.

## Discussion and Decision

Mark and Jimmie present seven points for decision.  Additional factual and procedural background will be provided when necessary as we review these points.  For ease of analysis, we will address the points in reverse order.  Some points will be considered together because of the intertwined nature of the issues presented.

### *Point VII – IRA Accounts*[5]

In Point VII, Mark contends the trial court erred in finding that Mark's Schwab IRA accounts (excluding the Guaranty Bank stock) were marital property.  Mark argues that:  (1) the trial court erroneously found that a $6,720 contribution was made the year after marriage; and (2) the trial erroneously failed to designate $107,087 as Mark's separate property because those funds can be traced back to City Bancorp stock and warrants which had been in the IRA prior to marriage.  We find no merit in either argument.

We begin by noting that the trial court has considerable discretion in determining whether, as a result of marital services or labor, nonmarital property has increased in value and whether that increase should be determined to be marital property.  ***In re Marriage of Patroske***, 888 S.W.2d 374, 378 (Mo. App. 1994).  Therefore, we will not disturb the trial court's decision on such matters without a clear showing of an abuse of discretion.  ***Id***.  We presume the trial court's order is correct, and the party challenging it has the burden of overcoming that presumption.  ***Id***.

---

[5] Jeneffer has moved this Court to strike Mark's Exhibit 29-A from the record on appeal.  *See **Bell I**, 360 S.W.3d at 282 n.15.  That motion is denied.

Mark first takes issue with the trial court's finding that a $6,720 contribution was made to the Schwab IRA in 2000. According to Mark, the evidence showed that contribution was actually made on December 31, 1999 and did not appear on statements until sometime in 2000. Assuming that is true, it provides no basis to overturn the trial court's ruling. Mark and Jeneffer were married on August 7, 1999. Whether the $6,720 contribution was made on December 31, 1999 or sometime in 2000, it was made after the marriage and is presumed to be marital property. *See* § 452.330.3.[6]

The second prong of Mark's argument fares no better. The trial court found that $209,975.49 of Mark's Schwab IRA accounts was marital property. Mark challenges this finding by arguing that: (1) $107,087 of the total amount originated from certain City Bancorp stock and warrants that were in the IRA prior to marriage; and (2) in August 2007, the stock and warrants were converted to BancorpSouth stock which had a value of $64,135.95 and which yielded an additional $42,951.05 in cash as part of the merger-exchange. According to Mark, this $107,087 should have been set aside as Mark's separate property because property acquired prior to marriage does not become marital property to the extent that it has increased in value.

While Mark is correct that an increase in value of separate property due to appreciation remains separate property, Mark's argument ignores the principal that this exception only applies to the extent that marital assets have not contributed to the increase. *See* **Meier v. Meier**, 306 S.W.3d 692, 702 (Mo. App. 2010). "Dividends and interest earned on separate property during a marriage are marital property." **Id**. "Once commingling occurs, the party claiming separate property has the burden of establishing

---

[6] In the reply brief, Mark argues that 60% of this contribution should be deemed nonmarital property because Mark and Jeneffer were only married for 40% of 1999. Mark does not offer, and we are unaware of, any authority supporting this argument.

that an identifiable portion of the funds can be traced to specific nonmarital assets." *In re Marriage of Looney*, 286 S.W.3d 832, 837 (Mo. App. 2009).

Additional evidence regarding Mark's IRA accounts was produced on remand. Nevertheless, the special master found that Mark failed to produce certain documents relating to the accounts and covering the period immediately before and during the first three years of marriage. There was sufficient evidence, however, for the court to find that both IRA accounts earned dividends on stocks, plus interest on money funds, after the parties were married. These funds earned by IRA accounts during marriage were used to purchase additional shares of City Bancorp stock before the merger with BancorpSouth.[7] In light of this evidence, it was Mark's burden to identify what portion of the accounts, if any, remained separate property. *See Meier*, 306 S.W.3d at 702. Based on the information before it, however, the trial court was unable to identify any portion of the stock which remained separate property. As the trial court noted, "[s]uch difficulty is made all the more so as a result of various periods for which Respondents failed to produce relevant statements that would have explained gaps and voids in the accounts, what was contributed to the accounts, and when missing transactions occurred."

On appeal, Mark neither acknowledges the evidence of contributions made to acquire additional City Bancorp stock during marriage nor points to anything in the record which would suggest some portion of the value of Mark's IRA accounts could be traced back to the City Bancorp stock present in the account prior to marriage. His conclusory argument that $64,135.95 of BancorpSouth stock, as well as an additional $42,951.05,

---

[7] As an example, statements for one of the IRA accounts reflect that 125 shares of City Bancorp stock were present in the account prior to marriage and that this number declined to 63 sometime in 2000, at which time an additional 125 shares were purchased with funds earned or deposited in the account.

9

should be set aside in its entirety as separate property ignores the record and provides no basis upon which to find the trial court abused its discretion. Point VII is denied.

### Points V and VI – Real Estate

In Points V and VI, Mark and Jimmie challenge the trial court's finding that Mark had ownership interests in each of the 85 real estate properties at issue. They contend this finding was unsupported by the evidence because: (1) six of the properties were "section 1031" properties, which were acquired in exchange for seven antecedent properties owned by Jimmie prior to Mark and Jeneffer's marriage (Point V); and (2) each of the 85 properties were purchased by Jimmie, and the record contained no evidence of any contributions made to these properties by Mark (Point VI).[8]

"[A] previous holding in a case constitutes the law of the case and precludes relitigation of that issue on remand and subsequent appeal." *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 61 (Mo. banc 1999). This doctrine governs successive cases that involve the same facts and issues, and it "[e]nsures uniformity of decisions, protects the parties' expectations, and promotes judicial economy." *Walton v. City of Berkeley*, 223 S.W.3d 126, 129 (Mo. banc 2007). As Jeneffer correctly notes in her brief, the appeal in *Bell I* established that these 85 parcels of real estate were marital property because Mark became the owner of this real estate after the marriage occurred, and he failed to rebut the presumption that they were marital property. *See Bell I*, 360 S.W.3d at 280-81. Our ruling became the law of the case and controlled proceedings on remand. Therefore, Mark and Jimmie could not relitigate that issue below or in this subsequent appeal. *See Welman v.*

---

[8] In general, "a Section 1031 exchange permits the seller of certain types of property to defer taxation of any capital gain in the sale by reinvesting the sales proceeds in property of a like kind." *Vest v. Kansas City Homes, L.L.C.*, 288 S.W.3d 304, 308 n.5 (Mo. App. 2009); *see also* 26 U.S.C. § 1031.

*Parker*, 391 S.W.3d 477, 483-84 (Mo. App. 2013); *Cranor v. Cranor*, 118 S.W.3d 222, 225-26 (Mo. App. 2003). Points V and VI are denied.

### Points I, II, III and IV – Jimmie's Liability

The remaining points are interrelated and challenge the trial court's findings and rulings with respect to Jimmie concerning the cash equalization payment of $401,080 for the 85 real estate properties, the $65,826.85 assessed as attorney's fees and the $6,740 assessed as special master fees in the judgment. We will address each issue separately.

### Cash Equalization Payment involving the Marital Real Estate

As noted above, this case was tried on Jeneffer's two-count First Amended Petition. Count I sought a dissolution of marriage. Count II alleged that Mark and Jimmie were engaged in a real estate partnership and conducted that business in their capacities as trustees of the first and second Bell trusts. The prayer for relief asked the trial court to determine what part of the real estate so held was marital property and to divide the same as required by law. Mark was named as a party both individually and in his capacity as a trustee of the first and second Bell trusts. Jimmie was named as a party only in his capacity as a trustee of those same trusts. Following *Bell I*, but prior to trial on remand, Jeneffer filed a motion to have Jimmie joined as an individual party pursuant to Rule 52.04.[9] The motion alleged in pertinent part that Jimmie:

> has transferred assets found to be both partnership and marital from himself in his capacity as a Trustee, Respondent herein and party to this lawsuit over which this Court has jurisdiction, to Jimmie Bell as in [sic] individual over whom this Court has no jurisdiction without Jimmie Bell, the individual, being added as a party herein. In other words, Jimmie Bell has placed assets which this Court must divide beyond any authority of this

---

[9] Rule 52.04 states, in pertinent part that "[a] person shall be joined in the action if … in the person's absence complete relief cannot be accorded among those already parties[.]" Rule 52.04(a)(1).

Court to enforce such division unless he is made a party to this lawsuit, in his individual capacity.

The trial court granted Jeneffer's motion and ordered Jimmy joined "as an individual party to this action."[10]

Ten days prior to the start of trial on remand and after the close of discovery, Mark and Jimmie filed amended federal income tax returns for 2010 and 2011. These tax returns, prepared by Jimmie, deleted all real estate previously shown as belonging to Mark on his 2009 tax return and reported all such real estate as now belonging to Jimmie. These returns were admitted at trial on remand without objection, and Jimmie offered similar evidence via his own testimony. In light of that evidence, the trial court established a constructive trust with the following ruling:

> Since legal titles to the 85-parcels of real estate are neither in Mark Bell's name nor the name of his trust, First Bell Trust, and are legally titled in either the name of Jimmie Bell's Second Bell Trust or Jimmie Bell's name individually, a constructive trust exists for the benefit of Mark Bell with Jimmie Bell being the constructive trustee of and for each of the 85-parcels of real property.

A cash equalization judgment of $401,080 (representing half of Mark's equity in the 85 parcels of real estate) was entered against Jimmie "in such constructive trustee capacity with respect to either or both his individual and Trustee capacities as parties joined herein and as title owner of said real properties irregardless [sic] of how the parcels are currently or hereafter legally titled."[11]

---

[10] This order was effective to make Jimmie an individual party although it does not appear the pleadings were amended to reflect that ruling. *See* **State ex rel. Morris v. McDonald**, 817 S.W.2d 923, 926-27 (Mo. App. 1991) (noting that a person can be added as a party by an appropriate trial court order).

[11] One of Jimmie's complaints on appeal is that the cash equalization judgment was entered against him individually. We do not interpret the judgment that way. The cash equalization judgment was entered against him only in his capacity as a constructive trustee of the 85 parcels of real estate.

Jimmie challenges the cash equalization judgment on three grounds: (1) Point I – the judgment is beyond the scope of the pleadings because Jeneffer's petition sought no relief against Jimmie individually; (2) Point II – the remedy of constructive trust was neither pled nor supported by the evidence; and (3) Point III – no evidence supports the trial court's factual finding that the 85 real estate properties were titled in Jimmie's name. We find no merit in any of these arguments.

With respect to Point I, the trial court's judgment was not beyond the scope of the pleadings. Jeneffer's First Amended Petition pleaded a cause of action for dissolution of marriage. She asked the court to determine what marital property involved in Mark and Jimmie's real estate business was being held by the first or second Bell trusts. Both Mark and Jimmie were joined as parties in their capacities as trustees of those trusts. On remand, Jeneffer filed a motion to have Jimmie joined as an individual party because he allegedly had been transferring marital assets to himself as an individual. After conducting a hearing, the trial court granted the motion and joined Jimmie as an individual party. When the ownership of putative marital property involves the interest of a third party, joinder of that party is necessary to alleviate due process concerns and permit the court to carry out its statutory duty of dividing the marital property between the spouses. *See **Bond v. Bond***, 161 S.W.3d 859, 860 (Mo. App. 2005). Those concerns were satisfied here because Jimmie was joined as a party both individually and as a trustee. This prong of Point I lacks merit.[12]

With respect to Point II, the trial court did not err by imposing a constructive trust upon marital property which Jimmie claimed to own. In ***Bell I***, we held that the 85 parcels

_____

[12] The other prong of Point I challenges Jimmie's liability for attorney's fees, which will be discussed separately, *infra*.

of real estate were marital property to be divided between Mark and Jeneffer. Therefore, the ownership of that property was no longer an issue in the case. On remand, however, Jimmie took the position that he owned all of these properties. By introducing evidence to that effect, the issue of the proper remedy to be utilized by the trial court to effectively divide that marital property was tried by implied consent. *See* Rule 55.33(b); *In re Marriage of Estep*, 978 S.W.2d 817, 819 n.1 (Mo. App. 1998) (issues tried by implied consent are treated as if raised by the pleadings if the evidence bears on a proposed new issue, rather than an issue already in the case); *Hulsey v. Hulsey*, 550 S.W.2d 902, 903-04 (Mo. App. 1977) (same holding). Accordingly, no formal amendment of Jeneffer's petition was required. The utilization of a constructive trust by the trial court was also supported by the evidence. The evidence that Jimmie claimed to own 100% of the 85 parcels of real estate suggested that he sought to unjustly deprive Mark of his interests therein. As the trial court found in the amended judgment, "Mark did not receive any consideration for such alleged transfer of ownership, and Mark remains liable for the same debt on the real estate as before such transfer." Jimmie does not challenge this finding on appeal. As the western district of this Court explained in *Brown v. Brown*, 152 S.W.3d 911 (Mo. App. 2005):

> The appellate courts of this state have often recognized the doctrine of unjust enrichment as a valid basis for the imposition of a constructive trust under § 160 of the RESTATEMENT (FIRST) of RESTITUTION (1937), which states, at 640-41: "Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." Accordingly, Missouri courts have long held that "a constructive trust is an equitable device to prevent injustice, particularly unjust enrichment."

*Id*. at 916-17 (internal citations omitted). Once equity is properly invoked, a court "will not relax its grasp upon the *res* until it shall have avoided a multiplicity of suits by doing

14

full, adequate and complete justice between the parties." *Stafford v. McCarthy*, 825 S.W.2d 650, 658 (Mo. App. 1992). Therefore, the trial court's use of a constructive trust as an equitable remedy to prevent such unjust enrichment was supported by the evidence. Point II is denied.

With respect to Point III, Jimmie argues there was no evidence to support the trial court's factual finding that the 85 real estate properties were titled in Jimmie's name. We find no merit in this argument. On remand, Jimmie presented evidence that he owned 100% of the 85 parcels of real estate. He presented amended tax returns, which were admitted in evidence, to support that position. The court found that such conduct by Jimmie had every appearance of attempting to hide ownership of the real estate. The trial court also found that:

> The debt structure applicable to the acquisition, financing, re-financing and operation of such real estate is convoluted, and the result of many complicated, confusing and tangled financial arrangements made by Jimmie Bell, with Mark Bell liable, while such real estate is titled in either the name of Jimmie's Second Bell Trust or Jimmie's name individually, and managed by Jimmie exclusively.

Based upon our review of the record, the evidence supports that finding. Furthermore, we perceive no prejudice to Jimmie in any event. *Bell I* decided that the 85 parcels of real estate were marital property subject to division by the trial court. The actual state of title had no bearing on the division because the trial court concluded that division in kind was not practical, desirable or prudent. The judgment ordered Mark and Jimmie to file with the trial court the legal descriptions of all 85 parcels of real estate so appropriate liens could be prepared by Jeneffer. Point III is denied.

### *Attorney's Fees*

Jimmie's first point also challenged the trial court's assessment against Jimmie of $65,826.85 in attorney's fees incurred by Jeneffer. We agree that the trial court erred in

this respect. A trial court is authorized to award attorney's fees in a dissolution proceeding. § 452.355; *see also* **Bell I**, 360 S.W.3d at 284-85. This statute, however, does not authorize the trial court in a dissolution action to assess attorney's fees against a third party. *See* **Rogers v. Rogers**, 803 S.W.2d 92, 99 (Mo. App. 1990), *overruled on other grounds by* **Lay v. Lay**, 912 S.W.2d 466 (Mo. banc 1995).[13] As the **Rogers** court explained:

> We have been unable to discover a case in which a third party was charged with attorney fees and/or costs under § 452.355, nor [are] we aware of any other statute which would provide for such an award. Statutes allowing taxation of costs are strictly construed. No item is taxable as costs unless specifically so provided by statute. Strictly construing § 452.355, it is our opinion the legislature intended this statute to permit the allocation and taxing of court costs and/or attorney fees against a petitioner or respondent only in a dissolution action.

**Rogers**, 803 S.W.2d at 99 (internal citations omitted). This prong of Point I has merit and is granted.

### *Special Master's Fees*

In Point IV, Jimmie challenges the judgment of the trial court assessing $6,740 in special master fees to "Respondents" because: (1) Jimmie was not a party to the case when the special master was appointed; and (2) Jimmie had no notice by pleading or otherwise that he could be liable for such fees.

---

[13] We note that the **Rogers** court construed § 452.355 RSMo (1986). Although the language of § 452.355 was modified by amendment in 1998, we find that the analysis in **Rogers** remains applicable. In pertinent part, the statute currently provides:

> [T]he court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees ….

§ 452.355; *accord* **Rogers**, 803 S.W.2d at 99.

In Jeneffer's brief, she argues that Point IV has been rendered moot by compromise and satisfaction of the judgment. We agree. A cause of action is moot when the question presented for determination would not have any practical effect upon an existing controversy. *State ex rel. Reed v. Reardon*, 41 S.W.3d 470, 473 (Mo. banc 2001). As a general rule, when a party voluntarily pays a judgment, the party may not appeal from that judgment. *St. Charles County v. Wegman*, 90 S.W.3d 142, 144 (Mo. App. 2002). "In deciding whether a case is moot, an appellate court is allowed to consider matters outside the record." *Medlin v. RLC., Inc.*, 194 S.W.3d 926, 930 (Mo. App. 2006).

The trial court's docket sheet reflects that, on July 18, 2014, the attorney who had served as special master in this case filed correspondence with the trial court indicating his receipt of a $5,840 check from Mark and Jimmie, which he accepted as payment for his services as special master. On August 1, 2014, a satisfaction of judgment was filed stating Mark and Jimmie "have paid the Special Master fees set forth in the Judgment of October 8, 2013, in full."

Although Mark and Jimmie submitted a reply brief, Jimmie raises no contention that the above payment was made involuntarily.[14] Based on the foregoing, the issues raised in this point have been rendered moot. Point IV is therefore denied as moot.

We reverse that part of the judgment holding Jimmie jointly liable to pay $65,826.85 for attorney's fees incurred by Jeneffer. In all other respects, the judgment is

---

[14] "When a defendant pays a judgment after execution or writ of garnishment in aid of execution has issued, courts have generally held that the payment was involuntary." *Kinser v. Elkadi*, 654 S.W.2d 901, 903 (Mo. banc 1983). Here, the docket sheet reflects that on July 17, 2014, a hearing was held on the trial court's motion that Mark and Jimmie show cause why they should not be held in contempt of court for non-payment of special master fees. Satisfying a judgment to avoid a finding of contempt does not render payment involuntary. *Southern Dist. Council of the Assemblies of God, Inc. v. Kirk*, 334 S.W.3d 599, 603 (Mo. App. 2011); *Braveheart Real Estate Co. v. Peters*, 157 S.W.3d 231, 233-34 (Mo. App. 2004).

affirmed. The cause is remanded for the entry of an amended judgment consistent with this opinion.


JEFFREY W. BATES, J. – OPINION AUTHOR

DANIEL E. SCOTT, P.J. – CONCUR

WILLIAM W. FRANCIS, JR., J. – CONCUR